**Certiorari Granted, June 8, 2011, No. 33,023**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-063**

**Filing Date: April 18, 2011**

**Docket No. 29,734**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellant,**

**v.**

**CHRISTOPHER GURULE and**
**LINDA DAVIS,**

    **Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
James W. Grayson, Assistant Attorney General
Albuquerque, NM

for Appellant

Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellee Gurule

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellee Davis

**OPINION**

1

**CASTILLO, Chief Judge.**

{1}     The State appeals from a district court order suppressing evidence. On appeal, the State claims that Defendants lacked standing to challenge the seizure of a digital camera, and even if Defendants had standing, the district court erred in concluding that the digital camera had to be suppressed because there was no probable cause to seize it during the execution of the search warrant. The State also claims that the district court erred in excluding certain testimony under the fruit of the poisonous tree doctrine. Finally, the State argues that the district court erred in suppressing out-of-court statements made by co-defendant Linda Davis, who resided with co-defendant Gurule at the home that was searched. We conclude that Defendants had standing to challenge the seizure of the digital camera and that the district court properly concluded that the seizure was not supported by probable cause. We also conclude that the district court did not err in suppressing testimony tainted by the illegal seizure and that statements made by co-defendant Davis were properly excluded as well. Accordingly, we affirm.

**BACKGROUND**

{2}     On September 5, 2007, Special Agent Lois Kinch, a law enforcement officer employed by the New Mexico Attorney General's Office, Internet Crimes Against Children Task Force, initiated an investigation into the distribution of child pornography on an ultra-peer internet site. During this investigation, Agent Kinch determined that a computer located at Defendants' home was one of the computers linked to this ultra-peer site, Gnutella, that was being used to share child pornography. She drafted an affidavit in support of a search warrant. The affidavit contained boilerplate sections outlining Agent Kinch's background and experience, describing how the ultra-peer network operates, and explaining Agent Kinch's beliefs about how child predators act and what items need to be seized in order to collect all relevant evidence of those acts. The affidavit also contained a section that stated that based on this particular investigation, Agent Kinch had reason to believe that someone using the computer at the home of Defendants was receiving, possessing, and/or distributing child pornography. Nothing in the affidavit provided any evidence that anyone at the home was actually taking pornographic photographs of children, only that someone was involved in downloading and distributing such images. Nevertheless, the affidavit states that, among numerous other items, any digital cameras should be seized.

{3}     Based on Agent Kinch's affidavit, the district court issued a search warrant on September 27, 2007. During the search of Defendants' home the following day, the officers seized a Sony Cybershot camera in a closet down the hallway from the bedroom where the computer was located. On February 5, 2008, Agent Kinch conducted a forensic analysis of the camera's digital information, in which she found images of Defendant Gurule engaging in sexual acts with a prepubescent girl. It was later determined that this girl was the four-year-old granddaughter of Defendant Davis.

{4}     Defendants moved to suppress the evidence obtained from the seizure of the camera. In response, the State argued that Defendants did not have standing to challenge the seizure

of the camera since the camera had been obtained by use of a fraudulently obtained credit card, and that even if they did have standing, the camera was properly seized pursuant to the warrant.

{5}     The district court granted Defendants' motion to suppress. In its order, the district court concluded that Defendants had standing to challenge the seizure of the camera, presumably finding Defendant Gurule's testimony that the camera was lawfully purchased to be credible. As to the legality of that seizure, the district court stated:

> 10.     The section of the affidavit which described the "current investigation" does not mention a digital camera in any manner connected to *this* case. [Agent] Kinch testified that she had no information that either defendant:
>
>> was involved in creating child pornography.
>>
>> had uploaded any images from a digital camera to the computer.
>>
>> had downloaded any images from the computer to a camera.
>>
>> had the equipment to transfer images between a camera and the computer.
>
> 11.     [Agent] Kinch testified that *if* [D]efendants had the proper cables, they *could* transfer images from the camera to the computer; and *if* [D]efendants had the proper cables, and *if* the cameras had a[n] optional aftermarket increased memory storage device, [D]efendant[s] *could* transfer images from the five (5) files that were known to contain the illegal images to the camera.
>
> 12.     The digital camera did not have the optional device. No cable to connect the camera and the computer was discovered.

Based on these facts, the district court concluded that there was no probable cause to seize the camera. The district court also concluded that certain witness testimony would be excluded because it was tainted by the illegal seizure and that a statement made by Defendant Davis would be excluded on confrontation grounds. The State then filed this appeal pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972).

**DISCUSSION**

**Motion to Suppress**

**Standard of Review**

{6}     We review the grant or denial of a motion to suppress as a mixed question of fact and

3

law. *State v. Gutierrez*, 2004-NMCA-081, ¶ 4, 136 N.M. 18, 94 P.3d 18. We determine whether the law was correctly applied to the facts and view "the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785; *see State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. Furthermore, we employ all reasonable presumptions in support of the district court's ruling. *See Jason L.*, 2000-NMSC-018, ¶ 11. With this is mind, we discuss below the more deferential review that applies to the issuance of search warrants.

**The Digital Camera**

**Standing**

{7}    The State argues that Defendants do not have standing to object to the seizure of the digital camera. "Whether a defendant has standing involves two inquiries: (1) whether the defendant had an actual, subjective expectation of privacy in the premises searched; and (2) whether the defendant's 'subjective expectation [is] one that society is prepared to recognize as reasonable.'" *State v. Zamora*, 2005-NMCA-039, ¶ 10, 137 N.M. 301, 110 P.3d 517 (quoting *State v. Esguerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct. App. 1991) (alteration in original)).

{8}    The State concedes that Defendants satisfied the first part of this inquiry in that they had an actual and subjective expectation of privacy in their shared residence. However, the State argues that Defendants failed to show that they had an expectation of privacy that society is prepared to recognize. *See Zamora*, 2005-NMCA-039, ¶ 11. Specifically, the State argues that the digital camera was likely purchased by a stolen credit card. *See United States v. Caymen*, 404 F.3d 1196, 1200-01 (9th Cir. 2005) (holding that a person who fraudulently purchased an item with someone else's credit card did not have an expectation of privacy in the item that society was prepared to recognize and therefore had no standing to raise a Fourth Amendment challenge to the seizure of the item).

{9}    Even assuming, arguendo, that we were inclined to adopt the principles discussed in *Caymen* in the context of a search of a home, a review of the evidence indicates that the matter involved a factual conflict resolved in favor of Defendants that would support standing under this analysis. Agent Kinch testified that during the execution of the search warrant, officers found eight to twelve credit cards and credit card statements that did not belong to Defendant Davis. One of these cards listed Defendant Davis as a cardholder, but it belonged to a victim of identity theft who lived out of state. Defendant Davis had used this card to purchase a memory stick for a digital camera at an Office Max on July 8, 2007. The State also presented evidence that the Sony Cybershot camera was distributed by Office Max North America in Las Vegas, Nevada, although Agent Kinch did not know to which store it had been distributed. In support of Defendants' standing, Defendant Gurule testified that he and Defendant Davis purchased the camera for the two of them at a Wal-Mart using a credit card and that he paid her cash to cover the purchase. In light of this testimony and our standard of review, the district court could find Defendant Gurule to be credible and conclude that the digital camera was lawfully purchased.

4

**{10}** The State cites to *State v. Van Dang*, 2005-NMSC-033, 138 N.M. 408, 120 P.3d 830, in support of its contention that Defendants needed to make a more affirmative showing in light of evidence that the camera may have been illegally obtained. In *Van Dang*, our Supreme Court held that a person claiming standing based on the owner's consent or permission needed to present some evidence of that consent. *Id.* ¶ 12. We are unpersuaded that the holding in *Van Dang* requires Defendants to introduce evidence beyond their own testimony in this case.

**{11}** In *Van Dang*, the defendant testified at the suppression hearing that he had a right to drive the rental car, but he did not testify that the person who rented the car had given him permission to drive it. *Id.* ¶ 2. In reaching its holding that the defendant lacked standing, the Court specifically relied in part on the defendant's failure to even claim he was given permission by the owner or renter. *Id.* ¶ 12. As previously discussed, in this case Defendant Gurule testified that he and Defendant Davis purchased the camera together and that he reimbursed her with a cash payment.

**{12}** Furthermore, in *Van Dang* our Supreme Court was considering a claimed privacy interest in an automobile. This case involves a dwelling, and our appellate courts have long recognized "[t]he constitutional distinction between vehicles and homes [which] turns on this privacy expectation. A lesser expectation of privacy attaches to a vehicle." *State v. Ryon*, 2005-NMSC-005, ¶ 23, 137 N.M. 174, 108 P.3d 1032; *cf. Esguerra*, 113 N.M. at 313-14, 825 P.2d at 246-47 (recognizing that the privacy interest in one's dwelling place is entitled to "the highest degree of protection from unreasonable intrusion by the government").

**Probable Cause to Seize the Camera**

**{13}** "The Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *State v. Nyce*, 2006-NMSC-026, ¶ 9, 139 N.M. 647, 137 P.3d 587, *limited on other grounds by State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376. Probable cause to issue the warrant requires a factual showing that there is a reasonable probability that evidence of a crime will be found in the place to be searched. *See State v. Evans*, 2009-NMSC-027, ¶ 10, 146 N.M. 319, 210 P.3d 216. As we noted, because this case involves the search of a dwelling place, it is "ordinarily afforded the most stringent [F]ourth [A]mendment protection." *State v. Clark*, 105 N.M. 10, 12, 727 P.2d 949, 951 (Ct. App. 1986).

**{14}** A search warrant may be issued when "sufficient facts are presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists." *State v. Gonzales*, 2003-NMCA-008, ¶ 11, 133 N.M. 158, 61 P.3d 867, *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29. "The degree of proof necessary to establish probable cause for the issuance of a search warrant is more than a suspicion or possibility but less than a certainty of proof." *Id.* ¶ 12 (internal quotation marks and citation omitted). "Thus, the magistrate must have sufficient facts upon which to conclude that there is a reasonable probability that evidence of a crime

will be found in the place to be searched." *Id.*

**{15}**    As we indicated above, our standard of review in considering search warrant probable cause determinations departs from that normally applicable to motions to suppress. "[A]n issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." *Williamson*, 2009-NMSC-039, ¶ 29.

> A reviewing court should not substitute its judgment for that of the issuing court. Rather . . . the reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing.

*Id.* "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30. As a result, "if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the [reviewing] courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (alteration in original) (internal quotation marks and citation omitted).

**{16}**    In this case, it is undisputed that Agent Kinch's affidavit provided probable cause to search Defendants' dwelling for evidence of child pornography. Notwithstanding an otherwise valid search warrant, however, "[t]he Fourth Amendment requires that a warrant describe with particularity the things to be seized." *United States v. Brobst*, 558 F.3d 982, 993 (9th Cir. 2009) (internal quotation marks omitted). "Search warrants must be specific in both particularity and breadth." *Id.* "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.* (internal quotation marks and citation omitted). Courts therefore will suppress an individual item for lack of an adequate description, to prevent unconstrained police discretion, *see State v. Hinahara*, 2007-NMCA-116, ¶ 8, 142 N.M. 475, 166 P.3d 1129, or for lack of probable cause with respect to any individual item. *See State v. Jacobs*, 2000-NMSC-026, ¶ 67, 129 N.M. 448, 10 P.3d 127 (observing practice of only suppressing illegally obtained items where search warrant was otherwise valid with respect to other items); *see generally* 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(f), at 641 (4th ed. 2004) (discussing partial invalidity of search warrant); Martin J. McMahon, Annotation, *Propriety in State Prosecution of Severance of Partially Valid Search Warrant and Limitation of Suppression to Items Seized Under Invalid Portions of Warrant*, 32 A.L.R.4th 378 (1984).

**{17}**    Here, there is no particularity of description concern because the search warrant expressly authorized the seizure of the digital camera. Instead, we consider whether the warrant was overly broad in its inclusion of the digital camera. This requires a review of Agent Kinch's affidavit. *See State v. Donaldson*, 100 N.M. 111, 117, 666 P.2d 1258, 1264 (Ct. App. 1983) (noting that courts do not generally look beyond the four corners of the

6

affidavit in examining sufficiency of the warrant).

**{18}** Agent Kinch's affidavit provided a detailed technical description of how she identified Defendant Davis's Internet Protocol (IP) address and how that address was linked to the ultra-peer sharing of child pornography. By searching the Gnutella ultra-peer site's own records, she was able to trace fifty-eight files to the Davis IP address, with names suggestive of child pornography, and one depicting a child under the age of twelve performing oral sex on an adult male. She concluded from her training and experience that the computer located at this IP address "was receiving, possessing and/or distributing child pornography." Agent Kinch also stated in her affidavit that it was necessary to seize "[c]omputer storage media to include but not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography." Of particular relevance to the issue here, Agent Kinch stated in her affidavit that it is common for online child predators "to collect adult pornography for the purposes of grooming a young child. This is why it is important to seize all computer devices[] and photographic equipment to which the residents have access."

**{19}** The State argues that the affidavit established a nexus between the possession or distribution of child pornography and the digital camera, because the camera is capable of storing digital images and downloading images to a computer. The State argues that the warrant may authorize officers to seize items "potentially connected" to the crime. *Hinahara*, 2007-NMCA-116, ¶ 10 ("All of the items sought in the warrant were potentially connected with the assault and the child pornography described in the affidavit."). *Hinahara* is distinguishable from the present case because all of the items were related to child pornography. The search warrant in *Hinahara* authorized the seizure of computers, video tapes, computer diskettes, CDs, DVDs, photographs, and magazines containing child pornography. *Id.* ¶ 3. That warrant did not state that digital cameras may be seized. *Id.*

**{20}** The State also relies on *Hinahara* for the proposition that when a court has determined that a dwelling contains contraband or evidence of a crime, "the officer can search every container and location within the permitted area where that item could be located." *Id.* ¶ 20 (internal quotation marks and citation omitted). We do not believe that it is necessary to rely on this independent authority because the search warrant expressly authorized the search of the digital camera. Instead, the dispositive issue is whether there was probable cause to permit the search of the camera. To the extent that the officers could have looked at images readily viewable at the scene, there is no indication that they did so in this case—it was not until after the camera was seized and a forensic examination conducted months later that the illegal images were discovered. In the absence of any indication that this camera, which did not contain a memory card, was being used for the storage of internet child pornography, or was being used for the independent manufacture of pornography, there was no substantial basis for concluding that there was probable cause that the camera would contain child pornography.

**{21}** Even if we assume that the ultra-peer sharing of child pornography constitutes the manufacture of child pornography, *see State v. Smith*, 2009-NMCA-028, ¶ 2, 145 N.M. 757,

7

204 P.3d 1267 (holding that copying child pornography to a portable storage device constitutes manufacturing), *cert. quashed*, 2009-NMCERT-012, 147 N.M. 601, 227 P.3d 91, there is a qualitative difference between this internet use and creating one's own child pornography, with its attendant child abuse. This qualitative difference is accompanied with further concerns over validating fishing expeditions that trump one's heightened privacy protections in the use of cameras and similar First Amendment, expressive media. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978) ("Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'" (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965))).

{22}   Defendants argue that, in the absence of evidence of broader criminal conduct, the better approach here would have been to seek an additional warrant based on newly obtained evidence. We agree. For example, the initial search may have led to the discovery of evidence supporting the requisite nexus between the camera and child pornography. The mere fact that the camera is capable of media storage is insufficient absent any indication of its use for child pornography. *See generally* Lily R. Robinton, *Courting Chaos: Conflicting Guidance from Courts Highlights the Need for Clearer Rules to Govern the Search and Seizure of Digital Evidence*, 12 Yale J.L. & Tech. 311 (2010) (discussing problem of overly-broad warrants in digital media context).

{23}   In summary, we conclude that the district court properly suppressed the digital camera because, even under our deferential standard of review, there was no probable cause to support its seizure. Our holding is made with consideration of both the heightened privacy expectation in one's home and its contents, and the additional First Amendment concerns that come in to play when a camera is searched.

**Fruit of the Poisonous Tree**

{24}   The State also challenges the exclusion of witness testimony under the fruit of the poisonous tree doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *see also State v. Ingram*, 1998-NMCA-177, ¶ 9, 126 N.M. 426, 970 P.2d 1151 ("Evidence which is obtained as a result of an unconstitutional search or seizure may be suppressed under the exclusionary rule." (internal quotation marks and citation omitted)). Here, the district court excluded the testimony of Defendant Davis's daughter, Candace Stevens, regarding Defendant Gurule's use of the computer on the ground that Candace's "existence would not have been known but for the illegal search." Naked images of Candace's young daughter, C.S., had been found on the digital camera during the forensic evaluation that took place months after the execution of the search warrant.

{25}   We have already concluded that the digital camera, which contained images of C.S., was illegally seized. Although a federal good faith exception permits admission of tainted evidence under certain circumstances, the New Mexico Constitution requires unconstitutionally obtained evidence to be excluded because "[d]enying the government the fruits of unconstitutional conduct at trial best effectuates the constitutional proscription of unreasonable searches and seizures by preserving the rights of the accused to the same extent

8

as if the government's officers had stayed within the law." *State v. Gutierrez*, 116 N.M. 431, 446, 863 P.2d 1052, 1067 (1993). However, notwithstanding New Mexico's rejection of the good faith exception, "not all evidence discovered as the result of police misconduct need be suppressed." *State v. Wagoner*, 2001-NMCA-014, ¶ 22, 130 N.M. 274, 24 P.3d 306. The applicable inquiry is whether the evidence would not have come to light "but for" the illegality. *Id.*

**{26}** The State argues that Candace would have independently come forward to provide information in this case. *See id.* ¶¶ 22-31 (discussing independent source doctrine). Because this issue required the district court to infer what might have occurred, we believe that we should defer to the factual finding that she would not have been involved. The record indicates that the district court's ruling on the "but for" finding was supported by substantial evidence. After the forensic examination of the camera, Agent Kinch showed Defendant Davis a non-pornographic image of the girl who appeared on the camera, at which time Defendant Davis identified the girl as her four-year-old granddaughter—the daughter of Candace. Up to this point, months after the initial search warrant took place, neither Candace nor her daughter was involved in this case. We therefore believe that the district court could reasonably infer that Candace would not have been a witness "but for" Agent Kinch's forensic search of the digital camera. As a result, we affirm the exclusion of Candace's testimony.

**Co-Defendant Statement**

**{27}** The State also challenges the district court's exclusion of testimony from Defendant Davis's son, who would have testified that she told him that she caught Defendant Gurule looking at child pornography on the computer. The district court determined that the testimony violated Defendants' right of confrontation under *Bruton v. United States*, 391 U.S. 123, 125 (1968), which held that the admission of statements by a co-defendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause when those statements implicated the defendant.

**{28}** The State argues that *Bruton* has been limited by *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), which held that the Confrontation Clause generally will not require the exclusion of non-testimonial statements. *Crawford* listed a "core class" of statements that are considered testimonial, including statements made under circumstances that would lead to the objectively reasonable belief that they would be used at a later trial. *See id.* at 51-52. Here, the prosecutor indicated to the district court that the statements were made sometime after the search warrant had been executed. It is objectively reasonable to believe that the statements would be used at trial. Nevertheless, the State argues that the United States Supreme Court does not deem every statement of this nature to be testimonial. *See Davis v. Washington*, 547 U.S. 813, 828 (2006) (characterizing statement made during 911 call as non-testimonial).

**{29}** We do not deem it necessary to decide whether the co-defendant's statements at issue in *Bruton* are limited by *Crawford* in that they now would need to be testimonial as well to be excluded. *Cf. United States v. Williams*, 429 F.3d 767, 773 n.2 (8th Cir. 2005) (noting

that "*Crawford* did not overrule *Bruton* and its progeny"); *United States v. Ramos-Cardenas*, 524 F.3d 600, 609-10 (5th Cir. 2008) ("[W]hile *Crawford* certainly prohibits the introduction of a codefendant's out-of-court testimonial statement against the other defendants in a multiple-defendant trial, it does not signal a departure from the rules governing the admittance of such a statement against the speaker-defendant himself, which continue to be provided by *Bruton* . . . ."). The reason we do not need to reach any possible *Bruton/Crawford* conflict is because it was objectively reasonable to anticipate that the statements made by Defendant Davis to her son would be used in a later trial, unlike the situation discussed in *Davis*, where other factors may make such a potential witness reluctant to cooperate with investigators. As such, we conclude that the statements fell within *Crawford's* "core class" of testimonial statements and were properly excluded even if that analysis applied.

**CONCLUSION**

**{30}** Based upon the foregoing, we affirm the district court.

**{31}** **IT IS SO ORDERED.**

---

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

---

**JAMES J. WECHSLER, Judge**

---

**LINDA M. VANZI, Judge**

**Topic Index for *State v. Gurule*, Docket No. 29,734**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-CT | Confrontation |
| CT-FA | Fourth Amendment |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-SE | Sexual Exploitation of Children |
| CL-CL | Controlled Substances |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-AW | Affidavit for Warrant |

| | |
|---|---|
| CA-MR | Motion to Suppress |
| CA-PA | Probable Cause |
| CA-SG | Standing |
| CA-SW | Search Warrant |
| CA-SZ | Search and Seizure |
| | |
| **EV** | **EVIDENCE** |
| EV-HR | Hearsay Evidence |
| EV-SU | Suppression of Evidence |
| EV-WT | Witnesses |