**Certiorari Denied, January 2, 2014, No. 34,440**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-024**

**Filing Date: November 19, 2013**

**Docket No. 31,808**

**STATE OF NEW MEXICO,**

     **Plaintiff-Appellee,**

**v.**

**PAUL CASARES,**

     **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**J. Richard Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}** Defendant appeals from two orders of the district court denying his motions to suppress. First, Defendant contends that all evidence seized from his home pursuant to a search warrant must be suppressed because the warrant failed to sufficiently specify the

1

items to be searched in that two of the items are described as "fingerprints" and "photography of the . . . evidence." Secondly, Defendant asserts that incriminatory statements made by him in a custodial interrogation must be suppressed because he is hearing impaired and was not informed that he was entitled to a sign language interpreter as required by federal law. In the circumstances of this case, we reject both arguments and affirm the district court.

## I.    BACKGROUND

**{2}**    Detective Timothy Argo of the Artesia Police Department was informed that in the early morning hours of August 17, 2010, a shooting occurred outside Victim's residence. Victim had moved into the residence to live with her friend after experiencing physical and verbal abuse from Defendant, who is her infant son's father. Victim continued to have trouble with Defendant and argued with him regarding their son over the course of several telephone conversations the night before and in the early morning hours of the shooting. Around 3:00 a.m., just before the shooting, Defendant asked Victim to bring their son to his house. When she refused, he told her he was coming over, and she heard him say, "Where's my gun, where's my gun?" Knowing that this meant she and her son were in danger, she gathered the child and took him to the back of the house for protection. A short time later, she heard a vehicle that sounded like Defendant's truck pull up and stop in front of the residence, followed by two gunshots. Defendant then called Victim several times, but she refused to answer. About a half hour after the shooting, Victim accepted Defendant's phone call, and he asked if she heard anything. When she responded that she had, he asked her, "[H]ow many?" She told him "[T]wo."

**{3}**    Detective Argo checked Victim's call log and confirmed nine missed and fifteen incoming phone calls from Defendant the evening before and the morning of the shooting. He also recovered a bullet from a vehicle parked in front of Victim's residence.

**{4}**    Based on this evidence, Detective Argo obtained a search warrant to search Defendant's residence. The warrant authorized officers to search the residence for the following nine items:

> 1.    Firearms to include but not limited to handguns.
> 2.    Firearm accessories to include but not limited to magazines, clips, holsters, boxes and owner's manuals.
> 3.    Ammunition
> 4.    Spent casings
> 5.    Projectiles
> 6.    Any item that would identify the occupant(s) of the residence to include but not limited to Driver's license, identification cards, credit cards, etc.
> 7.    Fingerprints
> 8.    Cellular telephone . . .

2

9.      Photography of the residence and evidence.

Police seized one black "semi-auto" pistol with magazine and four rounds of ammo, three rounds of live "ammo," and one Nokia flip phone with charger from Defendant's home pursuant to the warrant. They also took photographs of the home and the evidence that was seized. Importantly, no fingerprints were seized, nor were photographs taken of any evidence not listed in the warrant.

**{5}**      Following the search of Defendant's home, Detective Argo arrested him and took him to the police station for a custodial interrogation. Detective Argo read Defendant his *Miranda* rights. *See Miranda v. Ariz.*, 384 U.S. 436 (1966). For reasons unclear in the record, Detective Argo asked Defendant if he had a problem hearing. When Defendant informed the detective that he is hearing impaired, Detective Argo asked Defendant to read his *Miranda* rights aloud. Defendant read the *Miranda* warning out loud, signed a waiver of his rights, and proceeded to make several incriminating statements, including that he was not "that stupid to shoot at the house," and only shot the vehicle in the driveway. Following the interrogation, Defendant was charged with willfully discharging a firearm at or from a motor vehicle in violation of NMSA 1978, Section 30-3-8(B) (1993).

**{6}**      Defendant filed two motions to suppress evidence. In the first motion, Defendant asserted that the search warrant failed to satisfy the particularity requirement of the Fourth Amendment to the United States Constitution and therefore all of the evidence seized from his residence should be suppressed. In the second motion, Defendant argued that the *Miranda* warning he received prior to waiving his rights was legally insufficient because he was not informed of his right to an interpreter as a hearing-impaired individual.

**{7}**      The district court denied both motions to suppress, concluding that the search warrant satisfied the requirements of the Fourth Amendment and that Detective Argo had complied with *Miranda*. Defendant subsequently conditionally pled no contest, reserving his right to appeal the suppression issues.

## II.      DISCUSSION

**{8}**      On appeal from a district court ruling on a motion to suppress, findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171.

## A.      Validity of the Search Warrant

**{9}**      Defendant argues that the warrant is overly broad because two of the nine items authorized in the warrant—"fingerprints" and "photography of the . . . evidence"—fail to satisfy the particularity requirement of the Fourth Amendment. Specifically, he asserts that there is not sufficient language to limit the places to be searched for fingerprints or items to be photographed as evidence and that this lack of particularity permitted officers to rummage

through all of his belongings.  *See* U.S. Const. amend. IV (requiring that search warrants describe the place to be searched and the persons or things to be seized with particularity); *State v. Jones*, 1988-NMCA-058, ¶ 5, 107 N.M. 503, 760 P.2d 796 (explaining that the particularity requirement "is aimed at preventing 'general, exploratory rummaging in a person's belongings'" (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971))). As a result, he argues that he was entitled to a blanket suppression of all the evidence seized from his home pursuant to the warrant.

**{10}**    Even if Defendant is correct that "fingerprints" and "photography of the . . . evidence" lack the particularity required by the Fourth Amendment, he is not entitled to blanket suppression of all the evidence seized from his home pursuant to the warrant.  In *State v. Gurule*, 2011-NMCA-063, 150 N.M. 49, 256 P.3d 992, *rev'd on other grounds* 2013-NMSC-025, 303 P.3d 838, we noted that the particularity requirement of the Fourth Amendment has two dimensions:  a warrant must particularly and clearly identify what may be seized; and the scope of what may be seized is limited by the probable cause supporting the warrant.  *Gurule*, 2011-NMCA-063, ¶ 16.  We considered what relief is appropriate when a search warrant fails to satisfy either particularity requirement and agreed that it is appropriate to "suppress an individual item for lack of an adequate description, to prevent unconstrained police discretion, or for lack of probable cause with respect to any individual item." *Id.* (citation omitted).

**{11}**    In *Gurule*, there was no issue as to whether the warrant described a digital camera and other evidence to be seized with sufficient particularity.  *Id.* ¶ 17.  However, we concluded that because the warrant failed to establish probable cause to support seizure of the digital camera, it was overly broad, and therefore the digital camera was properly suppressed.  *Id.* ¶ 23.  Significant to the case before us here, we did not require blanket suppression of the remaining items seized under the warrant because there was no challenge that those items were deficient in the particularity required by the Fourth Amendment.  On certiorari, our Supreme Court reversed our determination that the warrant failed to establish probable cause to support seizure of the digital camera.  *Gurule*, 2013-NMSC-025, ¶ 29. However, our determination that suppression of only the item for which particularity is lacking is required was undisturbed.

**{12}**    Moreover, our conclusion in *Gurule* is consistent with other New Mexico precedent, which generally requires only suppression of improperly obtained evidence.  For example, in *State v. Jacobs*, 2000-NMSC-026, ¶ 40, 129 N.M. 448, 10 P.3d 127, the defendant asserted that because the police exceeded the scope of the warrant by seizing evidence not specified in the warrant, blanket suppression of all the evidence seized was required.  Our Supreme Court rejected this argument and agreed with the proposition that "'only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant.'"  *Id.* ¶ 41 (quoting *United States v. Le*, 173 F.3d 1258, 1269 (10th Cir. 1999)).  In cases where there was a flagrant disregard for the terms of the warrant or when searches were predicated on subterfuge, blanket suppression of all the evidence might be warranted.  *Id.*  However, Defendant makes no such argument

4

here. In *State v. Patscheck*, 2000-NMCA-062, ¶ 12, 129 N.M. 296, 6 P.3d 498, the defendant likewise argued that suppression of all evidence seized under a search warrant must be suppressed because the executing officers seized items not specified in the warrant. Like the Supreme Court, we also relied on *Le* and concluded that "blanket suppression of all the evidence seized . . . would not be appropriate" because there was no showing that the officers flagrantly disregarded the terms of the search warrant. *Patscheck*, 2000-NMCA-062, ¶ 14. [1]

**{13}** Applying the foregoing authorities, we conclude that Defendant is not entitled to blanket suppression of all the evidence seized from his home pursuant to the warrant. Moreover, nothing in the record indicates that police seized any fingerprints or made photographs of any evidence not otherwise listed in the warrant, and Defendant does not argue that police rummaged through his belongings or took photographs of other "evidence." Thus, there is nothing to consider severing from the warrant and suppressing in this case. We therefore affirm the district court order denying Defendant's motion to suppress the evidence obtained from his home pursuant to the search warrant.

**B.    Validity of the *Miranda* Warnings**

**{14}** Defendant next argues that the district court erred in denying his motion to suppress incriminating statements he gave in a custodial interrogation because he was given an inadequate *Miranda* warning. The *Miranda* requirements are well settled. Suspects must be adequately and effectively apprised of their rights before any questioning during a custodial interrogation in order to ensure that a suspect's Fifth Amendment right to be free from self-incrimination is protected. *See Miranda*, 384 U.S. at 467; *see also Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (holding that "the Fifth Amendment's exception from compulsory self-incrimination" applies to the states through the Fourteenth Amendment). Prior to a custodial interrogation, a person must be informed of his right to remain silent, that any statement made can be used as evidence against him, and that he has a right to have an attorney present. *Miranda*, 384 U.S. at 444. Once a suspect has been informed of these rights, police may proceed with questioning if the suspect waives these rights as long as the waiver is knowing, intelligent, and voluntary. *Id.*

**{15}** The parties agree that the statements Defendant seeks to suppress resulted from a custodial interrogation. It is also undisputed that prior to the interrogation, Detective Argo

---

[1] Our jurisprudence therefore seems to be in line with what is described as the "severability doctrine" that is followed in some iteration by most states. 2 Wayne R. LaFave et al., *Search and Seizure: A Treatise on the Fourth Amendment* § 4.6(f), at 814-18 (5th ed. 2012). However, we have not been asked to adopt, wholesale, this doctrine and its exceptions in this case. *See also* Martin J. McMahon, Annotation, *Propriety in State Prosecution of Severance of Partially Valid Search Warrant and Limitation of Suppression to Items Seized Under Invalid Portions of Warrant*, 32 A.L.R. 4th 378 (1984).

read Defendant his *Miranda* rights and that upon learning of Defendant's hearing impairment, he gave Defendant a written copy of the *Miranda* warnings, which Defendant read out loud. However, the warning did not notify Defendant that he had the right to an interpreter at no cost before proceeding. Defendant does not dispute that he was made aware of his right to remain silent, his right to an appointed or hired attorney, and that any statement that he made could be used as evidence against him as required by *Miranda* before he was interrogated. Defendant stipulated that he not only understood these rights, but also that he knowingly, intelligently, and voluntarily waived them.

**{16}** Defendant argues that even though he "subjectively understood" the written *Miranda* warnings, *Miranda*, as applied to him as a hearing-impaired person, required the additional warning that he was entitled to an interpreter. In support of this argument, Defendant points to the Rehabilitation Act of 1973, which provides that no otherwise qualified individual shall be subjected to discrimination based on a handicap "under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (2006). Pursuant to the Rehabilitation Act, the Department of Justice issued regulations (28 C.F.R. §§ 42.501 to -540), published in 45 Fed. Reg. 37620 (June 3, 1980). Appendix B of the regulations contains an analysis which states in part:

> Law enforcement agencies should provide for the availability of qualified interpreters . . . to assist the agencies when dealing with hearing-impaired persons. . . . If a hearing-impaired person is arrested, the arresting officer's *Miranda* warning should be communicated to the arrestee on a printed form . . . . The form should also advise the arrestee that the law enforcement agency has an obligation under Federal law to offer an interpreter to the arrestee without cost and that the agency will defer interrogation pending the appearance of an interpreter.

45 Fed. Reg. 37620, 37630 (June 3, 1980) (footnote omitted). Defendant argues that since he was not informed that he had the right to a free interpreter as therein set forth, his *Miranda* warning was incomplete. Defendant's argument fails for two reasons.

**{17}** First, the Rehabilitation Act and regulations ensuring its compliance only apply to "any program or activity receiving Federal financial assistance." *See* 29 U.S.C. § 794(a). Defendant asserts that the federal law applies to the Artesia Police Department without providing any evidentiary support that it is federally funded. In fact, Defendant was encouraged by the district court to supplement the record with relevant funding evidence, but failed to do so. Without evidence that the Artesia Police Department receives federal funding, Defendant's argument fails.

**{18}** Second, even if Defendant could successfully establish that the Artesia Police Department was legally required by federal law to advise him that he had the right to an interpreter, he offers no support for the proposition that the remedy is suppression of the incriminating statements. We will not consider an issue if no authority is cited in support

6

of the issue, because absent cited authority to support an argument, we assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Moreover, we note that at least one jurisdiction that faced this same issue has held that noncompliance with the Act does not *per se* require suppression of the evidence. *See People v. Gaylord*, 621 N.Y.S.2d 247, 247 (N.Y. App. Div. 1994) (concluding that "noncompliance with the Rehabilitation Act of 1973 . . . or 45 Federal Register 37630 does not, by itself, warrant suppression").

{19}  Because Defendant has failed to establish that the Artesia Police Department receives federal funding and is therefore subject to the Rehabilitation Act and its regulations, we decline to consider whether the Act required Defendant to be notified of the additional right to an interpreter in order for the *Miranda* warning to have been complete. Moreover, even if the federal law did apply to the Artesia Police Department, Defendant has provided no support for the proposition that the remedy for violating this law automatically requires suppression of the incriminating statements. Defendant has not argued that due to a hearing impairment, Defendant did not understand or properly waive his *Miranda* rights. We therefore affirm the district court's denial of Defendant's motion to suppress the incriminating statements.

## III.    CONCLUSION

{20}  The district court is affirmed.

{21}  **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**CYNTHIA A. FRY, Judge**

**Topic Index for *State v. Casares*, No. 31,808**

**APPEAL AND ERROR**
Standard of Review

**CONSTITUTIONAL LAW**
*Miranda* Warnings
Self-incrimination

Suppression of Evidence

**CRIMINAL LAW**
Shooting Offences

**CRIMINAL PROCEDURE**
*Miranda* Warnings
Motion to Suppress
Search and Seizure
Warrant

**EVIDENCE**
Admissibility of Evidence
Exclusion of Evidence