IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-025

Filing Date: June 13, 2013

Docket No. 33,023

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

CHRISTOPHER GURULE and LINDA DAVIS,

       Defendants-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Charles W. Brown, District Judge

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Acting Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Respondent Christopher Gurule

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Respondent Linda Davis

OPINION

MAES, Chief Justice.

{1}     The State raises three issues in its interlocutory appeal from the Court of Appeals'

1

affirmance of the district court's evidentiary rulings. First, the State asserts that there was probable cause to search and seize Defendant Linda Davis and Defendant Christopher Gurule's (collectively, Defendants) digital camera. Second, the State asserts that because there was probable cause to support the search and seizure of the digital camera, the Court of Appeals erred in affirming the district court's exclusion of testimony based on the fruit of the poisonous tree doctrine. Finally, the State contends that the district court and the Court of Appeals erred in concluding that the statement made by Defendant Linda Davis (Defendant Davis) to her son, Robert Davis (Robert), was testimonial and was to be excluded on confrontation grounds. For the reasons that follow, we reverse the Court of Appeals and remand to the district court for an evidentiary hearing regarding the admissibility of Defendant Davis' statement.

## I.	FACTS AND PROCEDURAL HISTORY

{2}	Defendant Christopher Gurule (Defendant Gurule) and Defendant Davis were charged with criminal sexual penetration of a minor contrary to NMSA 1978, Section 30-9-11(D) (2007), criminal sexual contact of a minor contrary to NMSA 1978, Section 30-9-13(A) (2003), kidnapping contrary to NMSA 1978, Section 30-4-1 (2003), sexual exploitation of a minor contrary to NMSA 1978, Section 30-6A-3(C) (2007), and conspiracy contrary to NMSA 1978, Section 30-28-2 (1979). The cases against the Defendants were joined by the district court.

{3}	In early September 2007, Special Agent Lois Kinch (Agent Kinch), with the New Mexico Attorney General's Office's Internet Crimes Against Children Task Force, began an investigation into the distribution of child pornography over the ultra-peer sharing internet site Gnutella. During Agent Kinch's investigation, she uncovered an Internet Protocol (IP) address associated with a New Mexico internet service provider that contained fifty-eight files that were available for sharing over the ultra-peer sharing network. Agent Kinch believed that, based on the file names, the files contained material that was sexually exploitative of children. Agent Kinch examined one of the files associated with the IP address, and confirmed that it contained child pornography. On September 6, 2007, Agent Kinch sent a subpoena duces tecum to Comcast requesting information identifying the subscriber of the IP address. Comcast informed Agent Kinch that the IP address belonged to Defendant Davis, residing at 1520 University Blvd. NE, Apt. 215, Albuquerque, N.M. 87102.

{4}	On September 27, 2007, Agent Kinch applied for a search warrant. Agent Kinch's affidavit stated that she believed the computer she identified in her initial investigation was being used to possess or distribute child pornography and that she believed there was probable cause to believe that "evidence of the exploitation of children by means of the possession and attempted distribution of child pornography in violation of New Mexico Statute [Section] 30-6A-3[(C)]" was located at 1520 University Blvd. NE, Apt. 215, Albuquerque, N.M. 87102. The affidavit requested authorization to seize and view "photograph[s], (including but not limited to negatives, still photos, video tapes, artists[']

2

drawings, slides, and any type of computer formatted photograph)" depicting children in a sexually explicit manner, as well as "computer hardware equipment, (including . . . digital cameras . . .)."

**{5}** Based on the information contained in Agent Kinch's affidavit, the issuing judge concluded that there was probable cause to support a search warrant, and incorporated the affidavit as part of the warrant. The warrant was executed the following day. The inventory of the items seized revealed that, among other things, the executing officers seized two digital cameras, a Diamage 7I and a Sony Cybershot—the camera at issue in this case.

**{6}** The search of the Sony Cybershot camera's internal memory revealed images of Defendant Gurule engaging in sexual acts with C.S., Defendant Davis' four-year-old granddaughter. Based on these images, Defendant Gurule was charged with criminal sexual penetration in the first degree, conspiracy to commit criminal sexual penetration of a minor, and conspiracy to commit sexual exploitation of a child. The counts against Defendant Gurule concerning sexual abuse are not part of the present case.

**{7}** Defendants filed three motions that are relevant to this appeal. In the first motion, Defendants objected to the search and seizure of the Sony Cybershot digital camera and filed a motion to suppress the physical evidence stemming from the illegal search and seizure. The district court found that the warrant did not contain specific information regarding the use of a digital camera in relation to the alleged crime and, therefore, there was no probable cause to allow for the search and seizure of the camera. The district court ordered the digital camera and "all evidence derived from the seizure of the camera and the search of the camera" suppressed.

**{8}** Defendants' second motion sought to exclude Candace Stevens (Stevens), the mother of C.S., from testifying at trial asserting that the State only became aware of Stevens' existence because of the illegal search and seizure of the digital camera. The State argued that Stevens' testimony should be permitted under the inevitable discovery doctrine because Defendant Davis mentioned to Agent Kinch that Stevens' children had been around the apartment, and therefore Stevens' existence would have been known regardless of the search and/or seizure of the digital camera. The district court granted Defendants' motion to exclude Stevens from testifying as a witness at trial stating that "[h]er existence would not have been known but for the illegal search . . . of the camera."

**{9}** Defendant Gurule then filed a third motion to limit the testimony of the State's witness Robert, Defendant Davis' son, at trial. The State intended to call Robert to testify that Defendant Davis informed him that she witnessed Defendant Gurule watching child pornography on their computer. The district court expressed concerns that, if admitted at trial, such testimony may violate Defendant Gurule's confrontation rights because Defendant Davis would not be subject to cross-examination regarding the alleged statement. The State asserted that the Confrontation Clause was not implicated because the statement made by Defendant Davis to her son, Robert, was nontestimonial. The district court ruled that the

proffered testimony presented classic Confrontation Clause and *Bruton* problems, and granted Defendant Gurule's motion to limit Robert's testimony. The district court also expressed concerns regarding the fact that the State had moved to join Defendants, and then was complaining of the effect of that decision.

**{10}** The State filed an interlocutory appeal pursuant to NMSA 1978, Section 39-3-3(B)(2) (1972) challenging two of the district court's orders and asserting that Defendants lacked standing to challenge the seizure of the Sony Cybershot camera, and that even if Defendants had standing to challenge the seizure, the district court erred in concluding that the seizure was not supported by probable cause. The State further asserted that the district court erred in excluding the evidence derived from the seizure of the digital camera, namely Stevens' testimony. Lastly, the State argued that the district court erred in excluding the out-of-court statements made by Defendant Davis to her son Robert on the grounds that such testimony would violate Defendant Gurule's confrontation rights.

**{11}** The Court of Appeals held that Defendants had standing to challenge the seizure of the digital camera; that the seizure of the digital camera was not supported by probable cause; that the testimony of Stevens was tainted by the illegal seizure of the digital camera and was properly excluded; and that the out-of-court statement made by Defendant Davis was testimonial and therefore inadmissible. *State v. Gurule,* 2011-NMCA-063, ¶¶ 1, 23, 26, 29, 150 N.M. 49, 256 P.3d 992. The State filed a timely notice of appeal to this Court pursuant to Rule 12-502 NMRA ("This rule governs petitions for the issuance of writs of certiorari seeking review of decisions of the Court of Appeals.").

**{12}** We granted certiorari to review the following issues: (1) whether seizure of the digital camera, as permitted by the warrant, was supported by probable cause based on the accompanying affidavit and whether search of that camera required an additional warrant; (2) whether the district court was correct in excluding Stevens' testimony under the fruit of the poisonous tree doctrine; and (3) whether the Confrontation Clause applies to statements between two family members when there is no involvement by any government official.

## II.    DISCUSSION

### A.    Agent Kinch's Affidavit Established Probable Cause to Search the Camera

**{13}** "The Fourth Amendment to the United States Constitution and [A]rticle II, [S]ection 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376 (alterations in original). Probable cause exists when "there are reasonable grounds to believe that a crime has been committed in that place, or that evidence of a crime will be found there." *State v. Evans*, 2009-NMSC-027, ¶ 10, 146 N.M. 319, 210 P.3d 216. "[B]efore a valid search warrant may issue, the affidavit must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be

searched." *Id.* ¶ 11 (internal quotation marks and citation omitted).

**{14}** "Probable cause must be based on substantial evidence." *State v. Haidle*, 2012-NMSC-033, ¶ 11, 285 P.3d 668 (internal quotation marks and citation omitted). Probable cause determinations, however, are not subject to bright line rules but rather are to be based on the assessment of various probabilities in a given factual context. 2 Wayne LaFave, et. al., *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.2(a), at 25 (5th ed. 2012). Therefore, in order for a search warrant to be issued, "sufficient facts [must be] presented in a sworn affidavit to enable the magistrate to make an informed, deliberate, and independent determination that probable cause exists." *State v. Vest*, 2011-NMCA-037, ¶ 7, 149 N.M. 548, 252 P.3d 272 (internal quotation marks and citation omitted). This requires that the probable cause determination be based on "more than a suspicion or possibility but less than a certainty of proof." *Evans*, 2009-NMSC-027, ¶ 11 (internal quotation marks and citation omitted); *see* 2 LaFave, *supra*, § 3.7(d), at 414 (explaining that a mere suspicion that the objects in question are connected with criminal activity will not suffice).

**{15}** In order for a search or seizure to be lawful there "must be a sufficient nexus between (1) the criminal activity, and (2) the things to be seized, and (3) the place to be searched." 2 LaFave, *supra*, § 3.7(d), at 518. "[U]nless it is . . . shown to be probable that [the items to be searched] constitute the fruits, instrumentalities, or evidence of [a] crime," then "a lawful basis for a search has not been established" and the items described in a warrant or affidavit "are not a legitimate object of a search." 2 LaFave, *supra*, § 3.7(d), at 518-19.

**{16}** "[A]n issuing court's determination of probable cause . . . must be upheld if the affidavit [supporting the warrant] provides a substantial basis to support a finding of probable cause." *State v. Trujillo*, 2011-NMSC-040, ¶ 17, 150 N.M. 721, 266 P.3d. 1 (internal quotation marks and citation omitted). "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Williamson*, 2009-NMSC-039, ¶ 30. This "deferential standard of review is appropriate to further the . . . strong preference for searches conducted pursuant to a warrant" and to encourage "police officers to procure a search warrant." *Trujillo*, 2011-NMSC-040, ¶ 18 (alteration in original) (internal quotation marks and citation omitted). In situations that present doubtful or marginal cases of probable cause, the reviewing court should resolve the issue by giving preference to the warrant. *Id.* (quoting *Massachusetts v. Upton*, 466 U.S. 727 (1984)). This standard, however, "does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause," *Williamson*, 2009-NMSC-039, ¶ 30, but rather precludes the reviewing court from substituting its judgment for that of the issuing judge, *Trujillo*, 2011-NMSC-040, ¶ 19.

**{17}** Therefore, in evaluating a probable cause determination, the reviewing court must focus on the issuing judge's determination regarding the information contained in the four corners of the affidavit. *Haidle*, 2012-NMSC-033, ¶ 10; *Vest*, 2011-NMCA-037, ¶ 7. If the

reviewing court concludes that the issuing judge's determination was correct, the reviewing court shall uphold the probable cause determination regardless of how the reviewing court might have handled the warrant as the issuing judge. *Evans*, 2009-NMSC-027, ¶ 12.

**{18}** The Court of Appeals held that it is "undisputed that Agent Kinch's affidavit provided probable cause to search Defendants' dwelling for evidence of child pornography." *Gurule*, 2011-NMCA-063, ¶16. The Court noted, however, that probable cause is only one consideration in determining whether a search warrant is valid—a warrant must also be specific in both particularity and breadth. *Id.* The Court of Appeals stated that the issue was not whether there was probable cause to search the Defendants' dwelling for evidence of child pornography, but rather whether the warrant was overly broad in its inclusion of the digital camera. *Id.* ¶ 17.

**{19}** The Court of Appeals looked to Agent Kinch's affidavit to resolve this issue and concluded that

> [i]n the absence of any indication that this camera, which did not contain a memory card, was being used for the storage of internet child pornography, or was being used for the independent manufacture of pornography, there was no substantial basis for concluding that there was probable cause that the camera would contain child pornography.

*Id.* ¶ 20. The Court explained that absent any indication that the camera was being used for child pornography, the mere fact that the digital camera could hold media storage was insufficient. *Id.* ¶¶ 21-22. The Court also expressed concerns that allowing searches like the one presented would result in fishing expeditions of expressive media, such as digital cameras, and presented First Amendment concerns. *Id.* ¶ 21. The Court of Appeals, therefore, concluded that there was no probable cause to support the seizure of the digital camera and that the district court properly suppressed the digital camera. *Id.* ¶ 23.

**{20}** The State asserts that both the district court and Court of Appeals erred in concluding that the search and seizure of the digital camera was not supported by probable cause. The State directs this Court's attention to Agent Kinch's affidavit, which stated that based on "her training and experience, online child predators have a very likely probability of possessing images of child pornography." Agent Kinch's affidavit further stated that those

> interested in child pornography are likely to maintain their collections for months, years and even decades. [That] these collections of child pornography could be in hard form, to wit: magazines, video collections, digitally stored, or loosely kept in hard form. . . . This is why it is important to seize all computer devices, *and photographic equipment to which residents have access. . . .* [It is also necessary] to seize most or all computer items . . . [and c]omputer storage media [that] include[s] but [is] not limited to floppy disks, hard drives, tapes, DVD disks, CD-ROM disks or other

6

magnetic, optical or mechanical storage which can be accessed by computers to store or retrieve data or images of child pornography . . . . [S]earching computer systems for criminal evidence requires experience in the computer field and a properly controlled environment.

(Emphasis added.). The State asserts that this information, coupled with Agent Kinch's investigation regarding the Defendants' use of Gnutella, provided the issuing judge with enough information to "reasonably infer that all or a substantial number of the files offered on the peer-to-peer network were child pornography and that [a person with such] quantities of child pornography would likely have a larger collection in digital or print form."

**{21}** The State further asserts that when a neutral judicial officer determines that a dwelling contains contraband or evidence of a crime, "the officer can search every container and location within the permitted area where that item could be located." *State v. Hinahara*, 2007-NMCA-116, ¶ 20, 142 N.M. 422, 166 P.3d 1129. Based on this rationale, the State asserts that because the warrant authorized the officers to "search for photographs of children participating in prohibited sexual acts," Agent Kinch was justified in searching the digital camera for images of children participating in such acts without the need for an additional search warrant to search the camera. The State cites *United States v. Paull*, 551 F.3d 516 (6th Cir. 2009) and *United States v. Upham*, 168 F.3d 532 (1st Cir. 1999) to support its assertion.

**{22}** In *Paull*, the defendant subscribed to an "online sharing-community that was created specifically for sharing child pornography collections." 551 F.3d at 523 (quotation marks omitted). The court held that if there was probable cause to believe the defendant possessed child pornography at this residence, then there was probable cause to search the most likely hiding places where such images could be concealed. *Id.* at 524.

**{23}** In *Upham*, the defendant challenged the particularity requirement of the warrant, asserting that it was too generic in its description of what was to be seized. 168 F.3d 532, 534-35. In addressing the defendant's concerns, the court explained that a warrant must supply enough information to control the executing officials' judgment regarding what to take, and cannot be so broad as to include items that should not be seized. *Id.* at 535. The court determined that the defendant's argument rested on the warrant's breadth, and concluded that the warrant's language authorizing "[a]ny and all computer software and hardware, . . . computer disks, disk drivers . . ." to be seized and searched off-premises was not overly broad, but rather was "about the narrowest definable search and seizure reasonably likely to obtain the images" of child pornography. *Id.* (alterations in original). The court went on to note that if the images could have been obtained through an on-site inspection, then there might not have been a sufficient justification for allowing the seizure of all computer equipment, since that category of "computers" may have included items that were not evidence of the crime. *Id.* The court concluded that because it is not easy to search computers and electronics for information that may have been deleted from, or hidden on, a hard drive or internal memory, on-site inspection was not feasible and the search and

7

seizure was lawful. *Id.*

**{24}** Therefore, by relying on these cases, the State appears to assert that because the issuing judge determined that there was probable cause to search Defendants' residence for evidence of child pornography, and because evidence of possessing or distributing child pornography could be contained on the digital camera's internal memory, that the search and seizure of the digital camera was lawful.

**{25}** Defendants assert that the warrant was overly broad and did not provide probable cause to support the search and seizure of the camera. Defendants argue that Agent Kinch's investigation did not provide any information that Defendants were creating child pornography and did not establish a nexus between the digital camera and the possession of pornographic images. Defendants, therefore, argue there was no probable cause to search or seize items related to creating or manufacturing child pornography. Defendants further assert that probable cause must exist for each item seized and that the affidavit did not contain any information that would lead an issuing court to believe that the camera was related to the pornographic images on the computer. Defendants contend that *United States v. Gleich*, 397 F.3d 608 (8th Cir. 2005), provides an example of how a situation, like the one presented here, should be handled.

**{26}** In *Gleich*, the victim told police that the defendant "had sexually assaulted him, photographed him in a sexually explicit pose[,] and exposed him to pornographic images of children on his computer and in magazines." 397 F.3d at 610. Based on this information, Officers obtained a search warrant. *Id.* The warrant permitted officers to search the defendant's "home and personal computer for child pornography and objects which may contain child pornography." *Id.* The police officers conducted a search and seized multiple computers and computer disks, and "found, but did not seize, a digital camera." *Id.* After examining the files on the computer and concluding that some of the images were taken with a digital camera, the officers obtained a second search warrant for the purposes of searching and seizing the digital camera. *Id.* The defendant challenged the validity of the second warrant asserting that there was no connection between the photos on the computer and the digital camera and therefore there was no probable cause. *Id.* at 612. The court disagreed. *Id.* In so doing, the court explained that in the affidavit establishing probable cause to search the camera, the officer stated that the images discovered on the defendant's computer during the first lawful search appeared to have been taken with a digital camera and that if the camera was analyzed, the bureau of criminal investigation lab could determine if the images on the defendant's computer were taken with that particular digital camera. *Id.* Based on this nexus, the court concluded that there was probable cause to support the issuing of the second warrant and the subsequent search of the camera. *Id.* Defendants, therefore, rely on *Gleich* to support their assertion that the State should have obtained a second warrant before searching the seized digital camera.

**{27}** We disagree. Although Defendants are correct that Agent Kinch could have attempted to secure an additional search warrant for the digital camera, she did not need to

do so under the facts of this case. In *State v. Hinahara*, our Court of Appeals explained that when "there is probable cause to search for a particular item, the officer can search every container and location within the permitted area where that item could be located." 2007-NMCA-116, ¶ 20. In *Hinahara*, the defendant was charged with multiple counts of sexual exploitation of a minor and aggravated assault against a household member. *Id.* ¶ 2. The charges arose after images of minors engaging in sexual activity were discovered on the defendant's computer's hard drive. *Id.* The defendant moved to suppress the images found on the computer as an unconstitutional search, asserting that "the search warrant was insufficiently particular and the search exceeded the scope of the warrant." *Id.* ¶ 6. The warrant and accompanying affidavit provided for the search and seizure of "firearms, magazines, ammunition and gun cases, computers, video tapes, computer diskettes, CD[s], DVDs, photographs and magazines containing child pornography or any other miscellaneous items." *Id.* ¶ 10 (alteration in original). The Court of Appeals concluded that the particularity requirement had been satisfied because "[a]ll of the items sought in the warrant were potentially connected with the assault and the child pornography described in the affidavit." *Id.* The Court concluded that "the seizure of unlawful images from within [the d]efendant's computer was within the scope of the warrant because the warrant authorized the search of the computer for the illegal images." *Id.* ¶ 21.

**{28}** Here, Agent Kinch's investigation revealed that a computer at Defendants' address was being used to share images of child pornography. Moreover, Agent Kinch stated that, based on her experience, "online child predators have a very likely probability of possessing images of child pornography" in various forms, making it necessary "to seize all computer devices, and photographic equipment to which the [subject of the investigation has] access." Based on this information, Agent Kinch attested that she had probable cause to believe that evidence of "the exploitation of children by means of the possession and attempted distribution of child pornography in violation of [NMSA 1978, Section] 30-6A-3" would be found at Defendants' address. Based on Agent Kinch's investigation, training, and experience investigating online child predators, there was a sufficient nexus between the suspected crime of possessing and attempting to distribute child pornography over an online network and the digital camera where such images might be stored. Therefore, because Agent Kinch had probable cause and was authorized by the warrant to search Defendants' address for evidence related to possession and attempted distribution of child pornography, Agent Kinch was permitted to search every container and location within Defendants' home in which such evidence could be stored, including computers and the digital camera.

**{29}** Accordingly, we reverse the Court of Appeals and hold that there was probable cause to support the search and seizure of the digital camera. Because we conclude that there was probable cause to search the digital camera, we further hold that the district court and Court of Appeals erred in excluding Stevens' testimony under the fruit of the poisonous tree doctrine.

**B.      Confrontation Clause**

9

**{30}**   We first address Defendants' assertion that the State is not an aggrieved party and does not have a right to appeal whether the district court and Court of Appeals' erred in concluding that the statement made by Defendant Davis to her son, Robert, was testimonial and would violate the Confrontation Clause.  In support of this assertion, Defendants argue that if the State wishes to use Robert's testimony against Defendant Gurule, the State could move to have the cases severed.  Therefore, Defendants assert that this Court need not resolve this issue because the State could do so on its own by filing a motion to sever and proceeding against Defendants separately.

**{31}**   The State has the right to appeal the district court's ruling pursuant to NMSA 1978, Section 39-3-3 (B)(2) (1972).  Section 39-3-3 provides that the State may

> [i]n any criminal proceeding in district court . . . appeal . . . to the [S]upreme [C]ourt or [C]ourt of [A]ppeals, . . . within ten days from a decision or order of a district court suppressing or excluding evidence . . . if the district attorney certifies . . . that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Furthermore, Defendants' argument is nothing more than conjecture and rests on the assumption that the district court would grant the State's motion to sever and would allow for the statement to be admitted into evidence at Defendant Gurule's trial under the hearsay rules.  Therefore, we conclude that the State is permitted to appeal the district court's ruling. Because the State is permitted to appeal this issue, we now address the confrontation issue.

**{32}**   The State asserts that the Court of Appeals erred in concluding that the statement made by Defendant Davis to her son, Robert, was testimonial and would violate the Confrontation Clause.  The State contends that the Confrontation Clause does not apply to nontestimonial statements like the statement made by Defendant Davis to Robert in which she informed him that she had witnessed Defendant Gurule looking at child pornography. The State, therefore, asserts that because the Confrontation Clause does not apply to nontestimonial statements made between two family members, the Court of Appeals erred in excluding the statement exchanged between Defendant Davis and Robert on confrontation grounds.  Defendant Gurule asserts that Defendant Davis' statement to her son was testimonial and, therefore, the Court of Appeals and the district court were correct in excluding Robert's testimony on confrontation grounds.

**{33}**   "The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him" and "bars the admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *State v. Walters*, 2007-NMSC-050, ¶ 21, 142 N.M. 644, 168 P.3d 1068 (first two alterations in original) (internal quotation marks and citations omitted).  We review questions of admissibility under the Confrontation Clause de novo. *State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110.

10

**{34}** Here, the Court of Appeals concluded that the district court properly excluded Defendant Davis' statement to her son Robert. *Gurule*, 2011-NMCA-063, ¶ 29. In so doing, the Court of Appeals concluded that Defendant Davis' statement fell within the "core class" of testimonial statements as laid out in *Crawford v. Washington*, 541 U.S. 36 (2004), because it was objectively reasonable that the statements made by Defendant Davis would be used at trial. *Gurule*, 2011-NMCA-063, ¶ 29. However, the Court of Appeals reached this conclusion without providing any analysis as to why Defendant Davis' statement fell within the "core class" of testimonial statements.

**{35}** In *Crawford*, the United States Supreme Court explained that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51. The Court went on to define testimonial statements as "solemn declaration[s] or affirmations made for the purpose of establishing or proving some fact," and provided examples of statements that would be considered testimonial, such as

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially[;] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions[;] . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Crawford*, 541 U.S. at 51-52. Post-*Crawford* cases addressing the issue regarding what constitutes a testimonial statement have focused on the declarant's primary purpose in making the statement. *See Michigan v. Bryant*, 562 U.S. __, ___, 131 S. Ct. 1143, 1162 (2011); *see generally Davis v. Washington*, 547 U.S. 813 (2006). In *Bryant*, the Court explained that the question regarding whether a statement is testimonial requires a court to objectively evaluate the circumstances in which the interrogation occurred, including the motives of the parties involved. 562 U.S. at ___, 131 S. Ct. at 1161, 1163-67.

**{36}** Defendants assert that the Court of Appeals was correct in classifying the statement as testimonial and that the Confrontation Clause required the exclusion of Robert's testimony. Defendants cite *State v. Walters*, 2007-NMSC-050, ¶ 23, in support of their assertion that the admission of a testimonial statement of a co-defendant violates the Confrontation Clause. *Walters*, however, presented a different situation than the one presented here.

**{37}** In *Walters*, the co-defendants' statements were "elicited by police" during a police investigation that was intended to "prove past events potentially relevant to [a] later criminal prosecution." *Id.* (internal quotation marks and citation omitted). Therefore, in *Walters*, this Court held that "statements of . . . co[-]defendants, [that are] products of a police investigation, are testimonial for the purposes of *Crawford.*" *Walters*, 2007-NMSC-050, ¶ 23. *Walters* is distinguishable from the present case because, here, Defendant Davis'

11

statement was made to her son, not a police officer, and was not part of a police investigation. Although Defendants and the Court of Appeals do not appear to view the distinction between a statement made to police officers or state officials and one made to a family member as relevant to the inquiry regarding whether the admission of Robert's testimony would violate Defendant's confrontation rights, we view this factor to be a relevant consideration when evaluating whether a statement is testimonial.

**{38}** Here, Defendant Davis' statement to her son is more akin to the situation in which a person makes a casual remark to an acquaintance than to an individual who makes a formal statement to a government official as part of a police investigation. *See Crawford*, 541 U.S. at 51. Moreover, it is not clear that a reasonable person in Defendant Davis' position would objectively believe that a statement made to his or her child would be used in a later criminal prosecution. *See Davis*, 547 U.S. at 814. Thus, Defendant Davis' statement lacks the hallmarks of a testimonial statement. Because Defendant Davis' statement was not testimonial, the Confrontation Clause under the post-*Crawford* line of cases is not implicated. Therefore, we must now determine whether the district court properly excluded Defendant Davis' statement under *Bruton v. United States*, 391 U.S. 123 (1968).

**{39}** The district court found that Robert's testimony would violate Defendant Gurule's confrontation rights under *Bruton*, 391 U.S. 123. In *Bruton*, two individuals were charged with armed postal robbery. 391 U.S. at 124. At the joint trial a postal inspector testified that one of the defendants confessed to him that he and the co-defendant committed the armed robbery. *Id.* The postal inspector obtained the confession during the course of two interrogations at the city jail where the defendant was being held on state criminal charges. *Id.* The United States Supreme Court held that the admission of one defendant's confession that implicated the co-defendant violated the co-defendant's "right of cross-examination secured by the Confrontation Clause of the Sixth Amendment." *Id.* at 126. The Court explained that the introduction of the defendant's confession, and the statements implicating the co-defendant, added substantial weight to the government's case in a form that was not subject to cross-examination because the defendant did not take the stand. *Id.* at 127-28.

**{40}** The central question is whether *Bruton* survives as a stand-alone objection under the Confrontation Clause for co-conspirators, independent of *Crawford* analysis, or whether *Crawford* now modifies *Bruton* to the extent of applying only to *testimonial* statements by a co-conspirator implicating another co-conspirator. If the latter, then *Bruton* would not apply to this non-testimonial statement for the very reason that *Crawford* does not apply. Recent federal cases addressing this question would appear to lend support to the latter view that *Bruton* must now be seen in light of *Crawford*. *See United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) ("[B]ecause *Bruton* is no more than a by-product of the Confrontation Clause, the [United States Supreme] Court's holdings in *Davis* and *Crawford* likewise limit *Bruton* to testimonial statements."); *United States v. Smalls*, 605 F.3d 765, 789 n.2 (10th Cir. 2010) ("[T]he *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements."). For that reason, we conclude that *Bruton* is no help to Defendant in the context of this case. We emphasize, however, that Defendant has not raised a separate claim under our State Constitution, and we offer no opinion as to whether confrontation would be more broadly available on that basis. Also, we point out that hearsay considerations under our state rules of evidence—that

do not necessarily track the Confrontation Clause—were raised below but remain undecided due to the priority of constitutional issues.  Hearsay objections as well as questions related to joinder and severance remain for the district court to consider on remand.

**{41}**    Accordingly, we conclude that the statement between Defendant Davis and her son was nontestimonial, and that Robert's testimony was improperly excluded under the Confrontation Clause.  Therefore, we reverse the Court of Appeals and remand this issue to the district court to determine whether the statement may be admitted pursuant to the rules of evidence.

## III.    CONCLUSION

**{42}**    We hold that the officers had probable cause to seize the digital camera. Accordingly, the Court of Appeals erred in affirming the exclusion of Stevens' testimony under the fruit of the poisonous tree doctrine.  We further hold that the Court of Appeals erred in concluding that the statements made between the two family members were testimonial. However, because the statements are hearsay, we remand this issue back to the district court to conduct a hearing regarding the statement's admissibility under the rules of evidence.

**{43}    IT IS SO ORDERED.**

_____
**PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**


_____
**BARBARA J. VIGIL, Justice**

**Topic Index for _State v. Gurule_, No. 33,023**

**APPEAL AND ERROR**
Interlocutory Appeal

Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Confrontation
Fourth Amendment
Suppression of Evidence

**CRIMINAL LAW**
Sexual Exploitation of Children
Controlled Substances

**CRIMINAL PROCEDURE**
Affidavit for  Warrant
Motion to Suppress
Probable Cause
Search Warrant
Search and Seizure

**EVIDENCE**
Hearsay Evidence
Suppression of Evidence
Witnesses