**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date:  August 11, 2014**

**Docket Nos. 31,412 and 31,895 (consolidated)**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**BOBACK SABEERIN,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores and Kenneth H. Martinez, District Judges**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

**{1}**    The issues in this appeal stem from two trials in which Defendant Boback Sabeerin was convicted of crimes related to his involvement in a vehicle identification number (VIN)-switching operation. In the first trial, Court of Appeals No. 31,412, Defendant was tried together with his co-conspirator, Anjum Tahir (Tahir). In the second trial, Court of Appeals No. 31,895, Defendant was tried alone. The two trials generated two appeals that we consolidate into this Opinion.

1

**{2}** Defendant makes a number of arguments in support of reversal. We hold that Defendant's motions to suppress in both No. 31,895 and in No. 31,412 should have been granted. The affidavit in support of a search warrant for Defendant's place of business at 112 General Arnold in Albuquerque, New Mexico, failed to establish probable cause as required by the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. As a result, we reverse.

**BACKGROUND**

**{3}** The investigation that led to the charges and subsequent convictions at issue in these appeals began when Tahir was arrested for attempting to steal an automobile. When Tahir was arrested, he was driving an automobile registered in his name, but bearing the VIN of a different automobile—one that had been purchased by Tahir at an insurance auction as a "complete burn and totaled" vehicle. Detective Timothy Fassler of the Albuquerque Police Department's auto theft unit learned that the true VIN of the vehicle that Tahir was driving had been reported stolen two months before Tahir's arrest. Detective Fassler's further investigation revealed that Tahir had purchased a large number of totaled vehicles at auction.

**{4}** Having received a tip that Tahir "did business" at a combined structure located at 108 and 112 Rhode Island (the Rhode Island property) in Albuquerque, Detective Fassler started surveillance at that property. From his surveillance, Detective Fassler concluded that Tahir had two vehicles—one that Detective Fassler concluded must have been stolen and its VIN altered and another of the same make, purchased at auction, that provided the VIN for its stolen counterpart. A search warrant was issued for the Rhode Island property on August 19, 2009, at 2:13 p.m., and a search confirmed the factual basis of Detective Fassler's search warrant affidavit and revealed other stolen and VIN-altered vehicles. During his investigation into Tahir's activities, Detective Fassler "learned" that Tahir also "did business" at 112 General Arnold (the General Arnold property) in Albuquerque, so he sent a unit to watch that property. Tahir was seen there and taken into custody. Because Detective Fassler observed vehicles at the General Arnold property which he described as "suspicious," he sought a search warrant for that property as well.

**{5}** On August 19, 2009, at 4:40 p.m., a search warrant was issued for the General Arnold property, and detectives proceeded to search the property. Defendant, the lessee of the property, arrived and agreed to speak with Detective Fassler. Detective Fassler read Defendant his *Miranda* rights, interviewed Defendant about the stolen and VIN-switched vehicles on his property, and Defendant gave a statement implicating Tahir and himself in a car theft and VIN-switching operation. Further, a search of the General Arnold property revealed a number of stolen vehicles, as well as evidence of a car theft and VIN-switching operation.

**{6}** On October 1, 2009, Defendant was indicted in No. 31,412. Similar charges were filed against Tahir, and the cases were joined. A jury trial was held and Defendant was found guilty. Based on the same investigation that led to the charges in No. 31,412, Defendant was

2

indicted in No. 31,895. A jury trial was also held in that case and Defendant was found guilty. Defendant appeals from his convictions in both cases. Because we hold that Defendant's motions to suppress should have been granted, and reverse on that basis, we do not reach his remaining arguments.

**The Search Warrant Affidavit Did Not Establish Probable Cause**

**{7}**     Defendant argues that the district court erred in denying his motions to suppress the evidence obtained as a result of the search of the General Arnold property. Defendant contends that the affidavit for the search warrant did not provide sufficient probable cause or specificity to support issuance of the search warrant, thereby rendering the search warrant invalid. Defendant attacks the affidavit for the search warrant on three bases. He argues that improper hearsay from an unknown source led the affiant, Detective Fassler, to believe that Tahir "also did business at 112 General Arnold." He also argues that Detective Fassler's "assertion that there were 'several suspicious vehicles' at" the General Arnold property was insufficient to "establish probable cause to believe that evidence of criminal activity would be found there." He argues further that the search warrant affidavit was too broad in its description of the parameters of the search. We agree with all three arguments.

**Probable Cause**

**{8}**     "The Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution both require probable cause to believe that a crime is occurring or seizable evidence exists at a particular location before a search warrant may issue." *State v. Williamson*, 2009-NMSC-039, ¶ 14, 146 N.M. 488, 212 P.3d 376 (alterations, internal quotation marks, and citation omitted). In *McDonald v. United States*, 335 U.S. 451, 455 (1948), Justice William O. Douglas explained the importance of the warrant requirement:

> We are not dealing with formalities. The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a[n issuing judge] between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law.

"Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place, or that evidence of a crime will be found there." *State v. Evans*, 2009-NMSC-027, ¶ 10, 146 N.M. 319, 210 P.3d 216.

**{9}**     A search warrant may only issue "on a sworn written statement of the facts showing probable cause for issuing the warrant." Rule 5-211(A)(4) NMRA. An affidavit in support of a search warrant "must contain sufficient facts to enable the issuing [judge] independently to pass judgment on the existence of probable cause." *Williamson*, 2009-NMSC-039, ¶ 30

(internal quotation marks and citation omitted); *see also State v. Knight*, 2000-NMCA-016, ¶ 15, 128 N.M. 591, 995 P.2d 1033 ("Affidavits supporting search warrants must be sufficiently detailed so that the analyzing court can make a probable cause determination."), *holding limited by Williamson*, 2009-NMSC-039, ¶ 29; *see also State v. Gonzales*, 2003-NMCA-008, ¶ 12, 133 N.M. 158, 61 P.3d 867 (stating that probable cause to issue a warrant requires a factual showing "that there is a reasonable probability that evidence of a crime will be found in the place to be searched"), *holding limited by Williamson*, 2009-NMSC-039, ¶ 29.

**{10}**     Detailed search warrant affidavits "must show: (1) that the items sought to be seized are evidence of a crime; and (2) that the criminal evidence sought is located at the place to be searched." *Evans*, 2009-NMSC-027, ¶ 11 (internal quotation marks and citation omitted). Additionally, search and seizure is only lawful where the search warrant affidavit sets forth a factual basis establishing "a sufficient nexus between (1) the criminal activity, and (2) the things to be seized, and (3) the place to be searched." *State v. Gurule*, 2013-NMSC-025, ¶ 15, 303 P.3d 838 (internal quotation marks and citation omitted).

**{11}**     There is no bright-line test for determining probable cause. *Evans*, 2009-NMSC-027, ¶ 11. Probable cause does not have to be based on absolute factual certainty, but it must be based on "more than a suspicion or possibility." *Id.* (internal quotation marks and citation omitted). "[A] mere suspicion that the objects in question are connected with criminal activity will not suffice." *Gurule*, 2013-NMSC-025, ¶ 14 (citing 2 Wayne LaFave, et. al., *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(d), at 414 (5th ed. 2012)); *see also Nathanson v. United States*, 290 U.S. 41, 47 (1933) (finding that a search warrant was improperly issued where the sworn affidavit was insufficient where it contained a mere affirmance of suspicion or belief by the affiant without setting forth the supporting facts or circumstances).

**{12}**     " '[P]robable cause' shall be based upon substantial evidence." Rule 5-211(E); *see also State v. Haidle*, 2012-NMSC-033, ¶ 11, 285 P.3d 668 (same). "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Williamson*, 2009-NMSC-039, ¶ 30. "This standard, however, does not preclude the reviewing court from conducting a meaningful analysis of whether the search warrant was supported by probable cause, but rather precludes the reviewing court from substituting its judgment for that of the issuing judge[.]" *Gurule*, 2013-NMSC-025, ¶ 16 (internal quotation marks and citation omitted). Hence, "if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Williamson*, 2009-NMSC-039, ¶ 30 (alteration, internal quotation marks, and citation omitted).

**{13}**     Any information that was not provided to the issuing judge at the time the search warrant affidavit and warrant were presented to him cannot be considered by the reviewing

court in assessing the validity of the warrant. "[I]n evaluating a probable cause determination, the reviewing court must focus on the issuing judge's determination regarding the information contained in the four corners of the [search warrant] affidavit." *Gurule*, 2013-NMSC-025, ¶ 17; *see also Williamson*, 2009-NMSC-039, ¶ 31 (noting that the reviewing court must consider only the information contained within "the four corners of the search warrant affidavit," as well as the affidavit as a whole). "All direct and circumstantial evidence alleged, as well as all reasonable inferences to be drawn from those allegations, should be considered." *State v. Snedeker*, 1982-NMSC-085, ¶ 24, 99 N.M. 286, 657 P.2d 613. As the reviewing court, we are required to give deference to the issuing court's determination of probable cause and should not substitute our judgment for that court. *Id.* ¶ 22. Our analysis is therefore focused at the time the affidavit was presented to the issuing judge and with only the information contained within the affidavit at that time.

**The Search Warrant Affidavit's Content**

**{14}**　On August 19, 2009, Detective Fassler obtained two search warrants. First, he obtained a warrant to search the Rhode Island property, which he had connected to Tahir through his investigation and his surveillance of the Rhode Island property. The affidavit in support of the Rhode Island property warrant explains that police began investigating Tahir when he was apprehended for auto theft. The search warrant affidavit goes on to explain that at the time Tahir was arrested, he was driving a stolen truck that had been VIN-switched with a similar truck which had been totaled and sold to Tahir at an auction in Arizona.

**{15}**　The search warrant affidavit details Detective Fassler's subsequent investigation into Tahir's VIN-switching operation, including internet searches revealing several totaled vehicles bought at auction and a tip that Tahir was doing business at the Rhode Island property. In the search warrant affidavit, Detective Fassler describes how, after receiving a tip regarding the Rhode Island property, he began surveillance there which revealed two Hummer vehicles; one red totaled Hummer SUV that Tahir had purchased at auction, and a second blue Hummer truck, which was registered to Tahir using the totaled red Hummer SUV's VIN. Based on Tahir's arrest for auto theft, the tip that Tahir was doing business at the Rhode Island property, and the discovery of the apparently VIN-switched Hummers at the Rhode Island property, Detective Fassler obtained the Rhode Island property search warrant.

**{16}**　After executing the Rhode Island property search warrant and confirming the presence of stolen and VIN-switched vehicles there, Detective Fassler sought a search warrant for the General Arnold property. The facts in the search warrant affidavit supporting the search warrant application for the General Arnold property appear to have been copied directly from the Rhode Island property search warrant affidavit. The information is identical except for the description of the General Arnold property, the sentence identifying and describing the vehicles visible through the fence, and three sentences added at the end of the affidavit. As a result, the General Arnold property search warrant affidavit contains all of the detailed factual information which was used to establish probable cause to search the Rhode

Island property, but relatively few facts related to the General Arnold property. The only additional facts pertaining to the General Arnold property are:

> There are numerous vehicles visible through the fence that have been, or are being dismantled. Also cars with no damage at all are visible.
>
> . . . .
>
> During the investigation [into Tahir's suspected criminal activity at the Rhode Island property], [Detective Fassler] learned that . . . Tahir also did business at 112 General Arnold. . . . [Detective Fassler] sent a unit to watch that [property] and [Tahir] was taken into custody walking around that business. Several suspicious vehicles can also be seen on that lot.

We must determine whether this language, within the four corners of the affidavit for the General Arnold property, provides sufficient facts upon which to conclude that there was a reasonable probability connecting Tahir's criminal activity at the Rhode Island property to the General Arnold property. We conclude that it does not.

**{17}**     The State argues that against the backdrop of the investigation and search of the Rhode Island property, the information leading police to the General Arnold property, Tahir's presence there, and the presence of "suspicious vehicles" on the premises, collectively support an inference that further evidence of Tahir's auto theft and VIN-switching operation would be found at the General Arnold property. We disagree.

**{18}**     The question before us is whether there are sufficient underlying circumstances in the General Arnold property search warrant affidavit from which the issuing judge could conclude that the information learned by Detective Fassler, no matter the source, was credible or reliable. The General Arnold property search warrant affidavit does not contain detailed facts that support such an inference. *Cf. State v. Dietrich*, 2009-NMCA-031, ¶¶ 14, 23, 145 N.M. 733, 204 P.3d 748 (holding that the search warrant affidavit contained sufficient information regarding the investigating detective's sources of information, including information from informants and from investigation to support a probable cause determination). While we understand that during the course of his investigation of the Rhode Island property Detective Fassler learned that Tahir did business at the General Arnold property, the affidavit is completely silent regarding the source and substance of such information. Detective Fassler does not specify, within the affidavit, how he learned of this information, nor did he explain the content of the information learned. More questions have been raised than answers have been provided. Was this information such that Detective Fassler could provide as first-hand knowledge? Was this information something he was told by another person, did he get it from documentation or other type of evidence that led him to determine that Tahir was engaging in the same criminal activity at both locations? It is unclear whether the information was obtained through a tip, as Defendant suggests, or whether it was obtained as a result of Detective Fassler's investigation. The search warrant

6

affidavit does not indicate whether police conducted any investigation into a possible VIN-switching operation at the General Arnold property. *Cf. State v. Trujillo*, 2011-NMSC-040, ¶ 28, 150 N.M. 721, 266 P.3d 1 (holding that details of the police investigation contained in the search warrant affidavit were sufficient to establish a factual basis for the probable cause determination).

**{19}** It is a concern that we cannot determine whether the source of this information learned by Detective Fassler is reliable or credible. *See* Rule 5-211(E) (stating there must be "a substantial basis for believing the source of the hearsay to be credible and . . . that there is a factual basis for the information furnished"); *see also State v. Cordova*, 1989-NMSC-083, ¶ 17, 109 N.M. 211, 784 P.2d 30 (holding that a two-prong test for evaluating whether hearsay information contained in an affidavit for search warrant is sufficient to establish probable cause under the New Mexico Constitution). There is insufficient information before the issuing judge to determine whether the substance or source of Detective Fassler's information is credible or reliable. There is also insufficient information before the issuing judge to determine whether the circumstances by which Detective Fassler, or his source, obtained this information, demonstrated the probability that the criminal activity taking place at the Rhode Island property was also taking place at the General Arnold property.

**{20}** It is also necessary to address whether there are sufficient underlying circumstances in the search warrant affidavit from which the issuing judge could conclude that the "suspicious" vehicles were reasonable grounds to believe that a crime had been committed at the General Arnold property or that evidence of a crime would be found there. *Evans*, 2009-NMSC-027, ¶ 10. The search warrant affidavit states that "suspicious vehicles" were observed on the premises. In describing the property, it does not explain why the vehicles were suspicious, other than to say that some of the vehicles looked like they were being dismantled and some did not. *Cf. Williamson*, 2009-NMSC-039, ¶ 32 (upholding a search warrant because the facts describing a suspicious package were sufficiently detailed to support the issuing court's determination of probable cause).

**{21}** Additionally, we note that where, as here, the facts provided in the search warrant affidavit only established conduct consistent with lawful activity, our inquiry should be "particularly exacting." *State v. Nyce*, 2006-NMSC-026, ¶ 14, 139 N.M. 647, 137 P.3d 587, *limited on other grounds by Williamson*, 2009-NMSC-039, ¶ 29. *See Nyce*, 2006-NMSC-026, ¶¶ 13-14 (holding that the purchase of tincture of iodine and hydrogen peroxide at multiple stores in a hurried manner is equally consistent with lawful activity and alone does not establish probable cause); *State v. Anderson*, 1988-NMCA-033, ¶ 16, 107 N.M. 165, 754 P.2d 542 (holding that facts consistent with a drug courier profile are insufficient in themselves to establish probable cause, because they "are generally descriptive of hundreds of innocent persons traveling through New Mexico on the interstate every day").

**{22}** The *Nyce* case presents an analogous situation where the observation of suspicious activity was insufficient to establish that it was reasonably probable that there was criminal activity occurring at the location identified. 2006-NMSC-026. In *Nyce*, the defendant

purchased multiple items at different stores. These items were ingredients used to make methamphetamine, but could also be used for legal purposes. *Id.* ¶ 2. She attempted to use a self-pay register. *Id.* She had a hurried pace. *Id.* ¶ 3. She purchased more items at another store and then dropped everything off at her boyfriend's home. *Id.* ¶ 4. Affiant noted that in his experience persons who purchased ingredients for methamphetamine buy the items in more than one store to avoid detection by law enforcement. *Id.* ¶ 3. Affiant suspected the boyfriend was involved in the manufacturing of methamphetamine. *Id.* ¶ 4. The Court concluded that these suspicious activities were insufficient to establish that it was any more or less probable that the defendant would use them for an illicit purpose. *Id.* ¶ 28. Thus, the affidavit failed to establish probable cause to support the issuance of a search warrant for the boyfriend's house. *See id.*

**{23}**     In *State v. Sansom*, 1991-NMCA-103, 112 N.M. 679, 818 P.2d 880, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6,  275 P.3d 110, this Court concluded that there was no probable cause to search a trailer where the affidavit in support of a search warrant recounted that the truck used during the commission of a crime and was believed to have been carrying the weapon used in the crime, was found parked in front of the trailer within twenty-four hours after the commission of the crime. *Id.* ¶¶ 2-3. There were insufficient facts in the search warrant affidavit to show that the suspect resided in the trailer or that evidence of the crime could be found in the trailer. *Id.* ¶¶ 14-15.

**{24}**     While the facts here may seem suspicious to police familiar with Tahir and the investigation into the Rhode Island property, they are also consistent with innocent, lawful activity. We conclude that the facts alone may be sufficient to arouse suspicion that the General Arnold property was connected to Tahir's criminal endeavors, but are insufficient to establish the reasonable probability that criminal activity was taking place at the General Arnold property, or that evidence of a crime would be found there.

**{25}**     To hold that the extensive concentrated details of the Rhode Island property affidavit is a sufficient reasonable inference to support the issuance of a search warrant for the General Arnold property dodges the protections set forth by the United States and New Mexico Constitutions. Again, a mere affirmance of a suspicion or belief by affiant that the objects in question are connected with criminal activity is insufficient to establish probable cause. *Gurule*, 2013-NMSC-025, ¶ 14; *see Nathanson*, 290 U.S. at 47; *Evans*, 2009-NMSC-027, ¶ 11.

**Affidavit's Concluding Paragraph**

**{26}**     Defendant also argues that the warrant does not describe with particularity the things to be searched or seized. The concluding paragraph of the affidavit for search warrant states:

> Based on the above information, and due to the circumstances, the Affiant respectfully requests this search warrant be granted in order to examine the scene for *any and all evidence which may lead investigators to the*

*offender(s) and or possible witnesses in this case* under the auspices of the District Court, County of Bernalillo, State of New Mexico.

(Emphasis added.) The Fourth Amendment to the United States Constitution requires that a search warrant particularly describe the "things to be seized." Article II, Section 10 of the New Mexico Constitution requires that the search warrant must describe the "things to be seized." "The purpose of the particularity requirement is to prevent general searches." *State v. Light*, 2013-NMCA-075, ¶ 22, 306 P.3d 534; *see also Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) (stating that "[t]he particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause"). There must be a sufficient nexus between the evidence law enforcement is looking for and the particular place being searched.

**{27}** In our recent opinion in *Light*, we concluded a search warrant was impermissibly broad when it allowed law enforcement to search "all persons" located within a theater known for illegal substances and the defendant's only connection to any crime was her presence at a public event where the illegal activity was taking place. 2013-NMCA-075, ¶¶ 1-2. The *Light* parties agreed that there was probable cause to search the defendant and that law enforcement was justified in entering and searching the premises for evidence of drugs and drug paraphernalia. *Id.* ¶ 23. However, the disagreement was with the validity of an "all persons" warrant. *Id.* ¶¶ 24-25.

**{28}** There is no question that the search warrant and supporting affidavit are clear about the place to be searched, the General Arnold property. The problem is with the all encompassing authorization given to law enforcement officers to search for and seize everything and anything that *they* the officers themselves determine "may lead investigators to the offender(s) and or possible witnesses" in the case. This warrant is therefore invalid as an impermissible general warrant.

**{29}** Accordingly, we conclude that the General Arnold property search warrant was invalid for lack of probable cause and as an impermissible general warrant. The comprehensive information pertaining to the Rhode Island property and the morsels of flawed information attributable to the General Arnold property fall short of showing the required nexus between Tahir and his alleged criminal activity at the Rhode Island property and Tahir and similar alleged criminal activity at the General Arnold property. *See Haidle*, 2012-NMSC-033, ¶ 36 (concluding that the facts included in the search warrant affidavit amounted to "bits and pieces of circumstantial . . . content . . . [which] fail[ed] to provide the substantial evidence required for the [judge] to find probable cause"). We reverse and remand for proceedings consistent with this Opinion.

**{30}     IT IS SO ORDERED.**

_____
                                        **M. MONICA ZAMORA, Judge**

9

**I CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

**JONATHAN B. SUTIN, Judge (dissenting).**

**SUTIN, Judge (dissenting).**

**{31}**    I respectfully dissent.

**{32}**    In reviewing a challenge to a search warrant, we do not substitute our judgment for that of the issuing court. *Trujillo*, 2011-NMSC-040, ¶ 17. Rather, looking at the affidavit as a whole, while considering the reasonable inferences that may be drawn from it, as well as the direct and circumstantial evidence alleged, we must determine whether it provides a "substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *Id.* ¶¶ 17, 19 (internal quotation marks and citation omitted). "Probable cause to search a specific location exists when there are reasonable grounds to believe that a crime has been committed in that place[] or that evidence of a crime will be found in that location." *Id.* ¶ 16 (alteration, internal quotation marks, and citation omitted). Because the relevant inquiry is whether the warrant-issuing court's determination of probable cause was supported by a substantial basis in the affidavit, we limit our review to "the information contained in the four corners of the affidavit." *Gurule*, 2013-NMSC-025, ¶¶ 16-17. If the affidavit provides a substantial basis to support a finding of probable cause, the issuing court's determination must be upheld. *Id.* ¶ 16. "When ruling on probable cause, we deal only in the realm of reasonable possibilities, and look to the totality of circumstances to determine if probable cause is present." *Williamson*, 2009-NMSC-039, ¶ 31 (internal quotation marks and citation omitted).

**{33}**    The majority places no significance on or relevance as to that part of the affidavit for the General Arnold property that recites the information in the Rhode Island property affidavit. The affidavit for the General Arnold property contained the same information that was in the Rhode Island property affidavit. The court issuing the General Arnold property search warrant had that information before it. The court's careful reading of the affidavit would provide reasonable inferences to support issuance of the search warrant. With the information contained in the affidavit for the General Arnold property relating to the Rhode Island property affidavit and the remainder of the information contained in the General Arnold property affidavit, I conclude that there existed probable cause to issue the General Arnold property search warrant.

**{34}**    The "tip" received and the investigation conducted by Detective Fassler were rendered credible from the information Detective Fassler obtained from the Rhode Island property investigation combined with his independent observation of the General Arnold property. Detective Fassler had probable cause to seek a search warrant the moment he saw

Tahir at the General Arnold property with the same sort of suspicious vehicles in sight that he discovered in his investigation of Tahir's activities at the Rhode Island property.

**{35}** The majority's view that the search warrant and affidavit too broadly authorized the executing officers to search and seize "everything and anything" conducive to the investigation is based on an isolated view of the affidavit's concluding paragraph. Majority Op. ¶ 28. Viewed within the context of the entire affidavit, an officer would reasonably discern the items to be seized under the warrant. *See United States v. Kuc*, 737 F.3d 129, 133 (1st Cir. 2013) (declining to read a single clause of a warrant in isolation, and recognizing that "a warrant's language must be read in context, such that the general tail of the search warrant will be construed so as not to defeat the particularity of the main body of the warrant" (internal quotation marks and citation omitted)); *United States v. Conley*, 4 F.3d 1200, 1208 (3d Cir. 1993) ("[T]he phrases in a search warrant must be read in context and not in isolation.").

**{36}** In the opening paragraphs of his affidavit, Detective Fassler stated that he had reason to believe that the following items were concealed at the General Arnold property: "stolen/altered vehicles[, v]ehicles with vin plates removed, [t]ools to take and alter vehicles, documentation of altering/changing vehicles[, r]emoved vin plates, [and] NADER labels[] to change and alter stolen vehicles['] identities." The affidavit included details regarding Detective Fassler's investigation into Tahir's VIN-switching operation at the Rhode Island property, and the fact that surveillance of the General Arnold property revealed an apparently similar operation. Against that backdrop, the affidavit concluded: "Based on the above information, and due to the circumstances, the Affiant respectfully requests this search warrant be granted in order to examine the scene for any and all evidence which may lead investigators to the offender(s) and or possible witnesses in this case[.]" Read in its entirety, the affidavit, which was attached to and incorporated by the warrant would permit an officer reading it to reasonably know that the items to be seized were those items particularly related to the at-issue VIN-switching operation, in particular the tools-of-the-trade enumerated in the initial paragraphs of the affidavit. *See State v. Hinahara*, 2007-NMCA-116, ¶ 9, 142 N.M. 475, 166 P.3d 1129 (stating that the test for particularity is whether the warrant would allow an officer reading it to reasonably discern the place to be searched and the items to be seized); *State v. Steinzig*, 1999-NMCA-107, ¶¶ 37-39, 127 N.M. 752, 987 P.2d 409 (rejecting the defendant's lack-of-particularity argument where the items "to be searched and seized were described with sufficient particularity to be specifically related to the [specific criminal] activity believed to be occurring at" the place to be searched). To assume otherwise exhibits a lack of faith in the sensibleness of police officers charged with reading and executing the search warrant.

---

**JONATHAN B. SUTIN, Judge**

11