**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2022-NMCA-030**

**Filing Date: January 31, 2022**

**No. A-1-CA-38523**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellant,

v.

**CLAYTON THOMAS BENEDICT,**

     Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett Loveless, District Judge**

Certiorari Granted, April 20, 2022, No. S-1-SC-39240. Released for Publication June 21, 2022.

Hector H. Balderas, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**OPINION**

**YOHALEM, Judge.**

**{1}**     Defendant Clayton Thomas Benedict was charged by the State with second-degree murder and the lesser included offense of voluntary manslaughter. Defendant, an Uber driver, picked up two intoxicated passengers late afternoon on Saint Patrick's Day 2019. One of the passengers vomited in the backseat of Defendant's car. Minutes later, Defendant stopped along the shoulder of I-25 and told the passengers to get out of the car. An argument about paying a clean-up fee escalated into what Defendant saw

as an attack sufficient to provoke him into fatally shooting James Porter (Victim), one of his passengers.

**{2}** The State appeals pursuant to NMSA 1978, Section 39-3-3(B)(1) (1972), from the district court's decision that there was no probable cause to bind Defendant over for trial on second-degree murder. The district court found probable cause solely on the lesser included offense of voluntary manslaughter. We agree with the State that the district court erred in failing to find probable cause to bind Defendant over for trial on second-degree murder and remand for amendment of the criminal information to include that charge.

## BACKGROUND

**{3}** The State filed a criminal information charging Defendant with second-degree murder, pursuant to NMSA 1978, Section 30-2-1(B) (1994), and voluntary manslaughter, pursuant to NMSA 1978, Section 30-2-3(A) (1994). The case proceeded to a preliminary hearing, as required by Article II, Section 14 of the New Mexico Constitution when the State prosecutes a felony by criminal information, rather than by grand jury indictment. The procedures in the district court for a preliminary examination are set forth in Rule 5-302 NMRA.

**{4}** At the preliminary examination, the State introduced into evidence a video recording of an hour-long interview of Defendant by law enforcement on the night of the shooting. The entire record interview was played for the district court during the preliminary hearing. Defendant's interview was the only evidence of the events leading up to the shooting of Victim that night.

**{5}** Defendant testified that he picked up Victim and Victim's friend, Jonathan Reyes, from a local bar. Reyes was so drunk he was on the ground, and Victim was trying to get him on his feet. Once both passengers were in the vehicle, Defendant noticed Reyes looked "woozy," so he rolled down the window for him, and asked both Victim and Reyes to let him know if Reyes needed to vomit, so he could pull over. A minute or two later, as Defendant approached the entrance to I-25, Reyes vomited all over the back seat of Defendant's car.

**{6}** Defendant told his passengers that Uber would charge Victim (who had hailed the ride) a clean-up fee, which angered Victim. It was undisputed that it was Uber's policy to charge a clean-up fee when a passenger vomited in a driver's vehicle. When Reyes looked like he was about to vomit again, Defendant pulled over on the shoulder of the highway and asked both passengers to get out.

**{7}** Both passengers got out of the vehicle through the passenger's side back door, and Victim slammed the door behind him. Defendant opened the door, partially stepped out of the driver's seat, and told Victim not to slam his door. Victim began pulling off his hat, sunglasses, and necklaces throwing them on the ground, and started walking toward Defendant, moving from the passenger's side of the vehicle, around the tail end,

toward the driver's door. Reyes told Victim it was "not worth it" and that they should just leave.

**{8}** Defendant told Victim to listen to his friend and advised both of them to go to the nearest stoplight, which was visible about a block away, sober up, and call another ride. Victim then pushed his friend aside and started moving toward Defendant again. Defendant pulled out a concealed handgun (which he was authorized to carry) stepped completely out of the driver's side of the vehicle, aimed the gun at Victim, and told Victim to "stop, back up, get away from me," and to "let me get in my car and leave." Victim stopped momentarily, but then began approaching Defendant again, yelling, "You want to fucking shoot me, then fucking shoot me, you fucking pussy." Defendant described backing up behind the driver's open door.

**{9}** Victim veered away, walking a couple of feet into the traffic lane, and waving his hands at passing vehicles. Defendant saw at least one truck swerve to avoid hitting Victim. Defendant indicated that while Victim was in the road, he thought that maybe he could get into his car, which was still running with the door open, and leave. Defendant reported feeling alarmed and confused by the fact that Victim had walked directly into traffic. Defendant was afraid that a car might veer to avoid hitting Victim and hit Defendant or his car, which remained on the shoulder, just out of the lane of traffic. Defendant stated that all these thoughts rushed through his mind and he could not be sure exactly what he was thinking, but, in any event, he did not get back into his car and drive away. Instead, Defendant stood in front of his car, on the other side of the open driver's side door, still holding his gun.

**{10}** Victim then turned back toward the car. Victim was close to the driver's side open door and continued his approach. Victim said something like, "You are too fucking pussy to shoot me. I'll just run you over with your car." When Victim reached the open driver's door, he began to reach his head and hands into the vehicle. Without giving a verbal warning, Defendant fired his gun. Defendant told police he "focused in on the center of mass . . . through the window." Defendant shot Victim repeatedly, continuing to shoot until Victim stopped moving. The medical examiner testified Victim had been shot five times, three times in the back, once in the side, and once in the shoulder. When asked by the police what he thought would happen if he did not shoot Victim, Defendant said that he believed that Victim would have either run him over or would have driven straight into traffic and injured others.

**{11}** The State called the medical examiner and a crime scene investigator who testified that the physical evidence was consistent with Defendant's story.

**{12}** At the conclusion of the preliminary examination, the district court ruled that the State had failed to establish probable cause to believe that Defendant had committed second-degree murder. The district court found probable cause for the lesser included offense of voluntary manslaughter, concluding that because there were both verbal threats and actions by Victim, there was sufficient provocation for the fatal shooting. The district court asked the State to prepare a revised criminal information charging only

voluntary manslaughter and entered a written order binding Defendant over for trial on voluntary manslaughter alone. The State appeals.

**DISCUSSION**

**{13}** Defendant argues, as a preliminary matter, that we lack jurisdiction to consider the State's appeal because the district court did not dismiss the charge of second-degree murder, but merely "diminished" it to voluntary manslaughter. The State contends that (1) in determining whether probable cause exists to bind over a defendant for trial, the district court must view all evidence presented at the preliminary hearing in the light most favorable to the State and draw all inferences in the State's favor; (2) whether there is sufficient provocation to reduce a charge of second-degree murder to voluntary manslaughter is exclusively within the province of the jury, and should not be the basis for a finding of no probable cause; (3) this Court should review the district court's application of the law of probable cause to the facts applying a de novo standard of review. We agree with the State as to the last point it makes on appeal: that the district court's application of the law to the facts should be reviewed by this Court de novo. We reject the deferential abuse of discretion or reasonable basis standard advocated by Defendant and by the dissent. Finally, reviewing the application of the law to the undisputed facts de novo, we reverse the district court's determination that there was no probable cause to bind Defendant over for trial on second-degree murder.

**{14}** We address each of the issues raised on appeal in turn, beginning with Defendant's threshold question of whether this Court has jurisdiction to consider this appeal.

**I.    This Court Has Jurisdiction to Consider This Appeal**

**{15}** Defendant contends that we lack jurisdiction to consider the State's appeal under Section 39-3-3(B)(1), which allows the State to appeal to this Court "within thirty days from a decision, judgment or order dismissing a complaint, indictment or information as to any one or more counts[.]" Defendant argues that the district court did not "dismiss" the State's second-degree murder count, but rather merely "diminished" the count to the lesser included offense of voluntary manslaughter. We are not persuaded.

**{16}** When a jurisdictional issue is raised, this issue must be decided before this Court reviews the other issues on appeal. *Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 10, 142 N.M. 786, 171 P.3d 300. "We review jurisdictional issues de novo." *State v. Lucero*, 2017-NMCA-079, ¶ 10, 406 P.3d 530.

**{17}** Defendant's claim that there was no appealable dismissal of the State's second-degree murder charge is based on the failure of the district court to issue an order expressly stating that the second-degree murder charge is dismissed. Instead of an order of dismissal, the district court directed the State to prepare an order, which the court entered, binding Defendant over for trial solely on the offense of voluntary manslaughter. The State's original criminal information had charged both second-

degree murder and the lesser included offense of voluntary manslaughter as an alternative.

**{18}** In determining whether an order or judgment is final, we look at the substance and effect of the judgment or order, and not its form. *State v. Ahasteen*, 1998-NMCA-158, ¶ 10, 126 N.M. 238, 968 P.2d 328, *abrogated on other grounds by State v. Savedra*, 2010-NMSC-025, ¶ 9, 148 N.M. 301, 236 P.3d 20. The district court's order binding Defendant over only on the lesser included offense of voluntary manslaughter, when both second-degree murder and involuntary manslaughter were charged in the State's criminal information, was functionally equivalent to a dismissal of the second-degree murder charge. *See State v. McCrary*, 1982-NMCA-003, ¶ 26, 97 N.M. 306, 639 P.2d 593 (holding that where the bind-over order only included the lesser included offense, the state could not charge the defendant on the greater offense). We, therefore, are not persuaded that Defendant has shown that the district court failed to follow Rule 5-302(D)(1)'s injunction to "dismiss without prejudice all felony charges for which probable cause does not exist." *State v. Carlos A.*, 1996-NMCA-082, ¶ 8, 122 N.M. 241, 923 P.2d 608 ("[T]here is a presumption of correctness in the rulings or decisions of the trial court and the party claiming error must clearly show error.").

**{19}** Defendant also argues that we lack jurisdiction on appeal because the dismissal is without prejudice. Although Defendant is correct that the dismissal is without prejudice and allows the State to again present the matter to a grand jury or to refile its criminal information, Section 39-3-3(B)(1) clearly expresses the intent of our Legislature to allow the state to appeal, even though the order is not final. The appellate jurisdiction of this Court is determined by our Constitution and our Legislature. *See State v. Armijo*, 1994-NMCA-136, ¶ 7, 118 N.M. 802, 887 P.2d 1269. Unlike civil appeals, where a final order is required to appeal, the State is authorized in a criminal case to appeal any order dismissing one or more counts of a complaint, indictment or information, regardless of whether the dismissal is with prejudice or without. *See id.* ¶ 6 (holding that Section 39-3-3(B)(1) recognizes the state's constitutional right to appeal even though the matter is not final). We decline to hold differently in this case. We accordingly conclude that this Court has jurisdiction to decide this appeal.

## II.     The District Court at Preliminary Examination Serves as an Impartial Fact-Finder

**{20}** Having determined that we have jurisdiction over the State's appeal, we next address the State's argument that the court conducting the preliminary examination must "view all evidence and draw all inferences in favor of the prosecution." We disagree.

**{21}** Article II, Section 14 of the New Mexico Constitution requires that before a person "shall be held to answer for a capital, felonious or infamous crime," the prosecutor must either obtain an indictment by a grand jury or must file an information, which then must be followed by a preliminary examination before a magistrate or judge: "No person shall be so held on information without having had a preliminary

examination before an examining magistrate, or having waived such preliminary examination." [1] N.M. Const. art. II, § 14.

**{22}**    The procedures required for a preliminary hearing in New Mexico do not command sole reliance on the evidence offered by the state. Rather, the rules of procedure adopted by our Supreme Court allow the defendant to subpoena and call witnesses on the defendant's behalf, Rule 5-302(B)(3); to cross-examine the state's witnesses, Rule 5-302(B)(4); and to raise objections based on the Rules of Evidence, Rule 5-302(B)(5). These provisions require the district court to hear both the state's evidence and the evidence submitted by the defendant and "determine probable cause from *all* the evidence." *State ex rel. Hanagan v. Armijo*, 1963-NMSC-057, ¶ 11, 72 N.M. 50, 380 P.2d 196.

**{23}**    Drawing all inferences from the evidence in the state's favor would conflict with the defendant's right to present evidence and to have disputes of fact and questions of credibility resolved by an impartial judge. *See State v. Perez*, 2014-NMCA-023, ¶ 11, 318 P.3d 195 (criticizing a magistrate's failure at a preliminary hearing to apply "more rigorous evidentiary requirements and [to engage in] careful fact-finding" (alteration, internal quotation marks, and citation omitted)).

**{24}**    We, therefore, reject the State's claim that the district court must draw all inferences from the evidence in favor of the State.

### III.    In a Preliminary Hearing, the District Court Must Determine Whether Probable Cause Exists as to Every Element of the Charged Crime

**{25}**    The State next argues that the district court should not have considered the sufficiency of the provocation in determining whether there was probable cause to bind Defendant over for trial on second-degree murder. The State claims that, because it involves "a specific determination or finding," which is an element of the offense, only the jury can determine the sufficiency of the provocation.

**{26}**    The cases relied on by the State on appeal address the question of whether the jury at trial should be instructed on the element of sufficient provocation. *See, e.g.*, *Sells v. State*, 1982-NMSC-125, ¶ 8, 98 N.M. 786, 653 P.2d 162. While the State is correct that the jury, rather than the judge, is responsible for determining at trial whether the defendant is guilty of each element of the charged crime beyond a reasonable doubt, these cases do not address the role of the judge in determining probable cause at a preliminary hearing, the matter at issue in this appeal.

---

1Initially, under Article II, Section 14 of the New Mexico Constitution, only magistrates could hold a preliminary examination. However, Article VI, Section 21 of the New Mexico Constitution, as amended in 1966, provides that "[d]istrict judges and other judges or magistrates designated by law may hold preliminary examinations in criminal cases." Preliminary examinations held by the magistrate or metropolitan court are governed by Rules 6-202 and 7-202 NMRA respectively, which are substantially identical to Rule 5-302.

**{27}** The State having presented no authority for its claim that it need not show probable cause to believe the accused committed each element of the crime charged, we do not address this issue further. *See State v. Casares*, 2014-NMCA-024, ¶ 18, 318 P.3d 200 ("We will not consider an issue if no authority is cited in support of the issue, because absent cited authority to support an argument, we assume no such authority exists.").

## IV. Our Review of the Application of the Law of Probable Cause to the Facts Is De Novo

**{28}** We next turn to the standard of review applied by this Court to a lower court's decision applying the law of probable cause. The standard of review has not been previously addressed and is, therefore, an issue of first impression.

**{29}** The State argues that because a probable cause determination is a mixed question of law and fact, and because application of the probable cause standard requires the exercise of judgment about the values that animate legal principles, our review should be de novo. Defendant, in contrast, contends that our review should defer to the district court's decision and suggests either an abuse of discretion, or "substantial basis"[2] standard. We agree with the State that our review of the application of the law to the facts found by the district court should be de novo.

**{30}** Determining whether a prosecution is grounded in probable cause to believe that a crime was committed, and the defendant likely committed it, involves the weighing of important legal values: the state has a strong interest in enforcing its statutes and in being able to exercise its charging discretion in good faith, *State v. Heinsen*, 2005-NMSC-035, ¶ 10, 138 N.M. 441, 121 P.3d 1040, and the accused has a right to an independent evaluation of whether the state has met its burden of demonstrating that a prosecution is neither hasty nor ill-considered, but is supported by probable cause. *See State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶¶ 5-6, 124 N.M. 375, 950 P.2d 818.

**{31}** In addition to requiring the weighing of competing values, a determination of probable cause is not susceptible to "bright-line, hard-and-fast rules." *State v. Evans*, 2009-NMSC-027, ¶ 11, 146 N.M. 319, 210 P.3d 216. The parameters of probable cause are developed on a case-by-case basis, each case requiring the court to weigh, under the totality of the unique circumstances of that case, whether the prosecution has established reasonable grounds to believe that the accused likely committed the crime charged. *See Hanagan*, 1963-NMSC-057, ¶ 11.

**{32}** The factors relied upon by our Supreme Court in *Williamson*, 2009-NMSC-039, ¶ 28, to support the adoption of a deferential standard of review for a magistrate's

---

[2]"Substantial basis" is the deferential standard of review, described as somewhere between substantial evidence and de novo review, adopted by our Supreme Court for review on appeal of a finding of probable cause to issue a search warrant. *See State v. Williamson*, 2009-NMSC-039, ¶ 30, 146 N.M. 488, 212 P.3d 376.

decision to issue a search warrant do not apply to the probable cause determination at preliminary hearing. The less demanding standard of review in *Williamson* was adopted in recognition of the often pressing demand for a quick decision on a warrant request in the lower court and to effectuate this state's strong preference in favor of the warrant process. *Id.* (noting that searches conducted pursuant to a search warrant are reviewed under a less demanding standard "because deference to the warrant process encourages police officers to procure a search warrant").

{33}     Neither of these factors apply here. The decision as to probable cause to bind a defendant over for trial is made well after the arrest, the filing of the information, and the appointment of counsel, and follows an on-the-record evidentiary hearing. *See* Rules 5-302, 6-202, 7-202 (setting the procedures for a preliminary hearing in district court, magistrate court, and metropolitan court, respectively). Our review of the district court's determination of probable cause at a preliminary hearing is similar to review on appeal of a district court's pretrial determination of probable cause to conduct a warrantless search. That decision, like the decision reviewed here, is made after the fact, following full hearing by the district court. Our Supreme Court in *Williamson* approved the continued use of a de novo standard of review for the application of the law to the district court's findings of fact when reviewing a pretrial decision involving probable cause to conduct a warrantless search. 2009-NMSC-039, ¶ 27.

{34}     We therefore conclude that a de novo standard should be applied to our review of the application of the law of probable cause to the district court's findings of fact, or to undisputed facts in the record.

## V.     The Application of the Law to the Undisputed Facts in This Case

{35}     At a preliminary hearing, the state is required to establish only two components: (1) a crime has been committed; and (2) probable cause exists to believe the person charged committed it. *State v. Vallejos*, 1979-NMCA-089, ¶ 7, 93 N.M. 387, 600 P.2d 839. The district court at preliminary hearing is not deciding the case; it is merely deciding whether the case should be tried. "The test at a preliminary hearing is not whether guilt is established beyond a reasonable doubt, but whether there is that degree of evidence to bring within reasonable probabilities the fact that a crime was committed by the accused." *State v. Garcia*, 1968-NMSC-119, ¶ 6, 79 N.M. 367, 443 P.2d 860. Reasonable grounds are "more than suspicion but less than certainty." *State v. Goss*, 1991-NMCA-003, ¶ 17, 111 N.M. 530, 807 P.2d 228. "When ruling on probable cause, we deal only in the realm of reasonable probabilities, and look to the totality of the circumstances to determine if probable cause is present." *State v. Nyce*, 2006-NMSC-026, ¶ 10, 139 N.M. 647, 137 P.3d 587, *overruled on other grounds by Williamson*, 2009-NMSC-039, ¶ 29 & n.1. If probable cause is found, the defendant's guilt or innocence remains a question for a jury to decide following a criminal trial where the defendant is provided full due process. *See Garcia*, 1968-NMSC-119, ¶ 5 ("The preliminary hearing and the trial are separate and distinct.").

**{36}** With these principles in mind, we are asked to determine whether the district court erred in concluding that there is no probable cause to believe that Defendant committed the crime of second-degree murder. The elements of the crime of second-degree murder are (1) the defendant killed the victim; (2) the defendant knew that his acts created a strong probability of death or great bodily harm, and (3) there was not "sufficient provocation." *See* UJI 14-210 NMRA. " 'Sufficient provocation' can be any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions. The provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition." UJI 14-222 NMRA.

**{37}** Defendant argued below, and contends on appeal, that the district court correctly concluded that the evidence established that there was sufficient provocation, ruling out the charge of second-degree murder and requiring that Defendant be charged only with voluntary manslaughter. The State contends that the undisputed facts are sufficient to establish a reasonable basis to believe that Defendant likely committed second-degree murder, and that, therefore, the district court erred in dismissing the second-degree murder charge and binding Defendant over for trial only on voluntary manslaughter.

**{38}** The State points to undisputed evidence that it claims is sufficient to establish probable cause. It was undisputed that Defendant pointed a gun at the unarmed Victim early in the encounter, based on little provocation other than an argument about the charge for cleaning up the vomit in the back seat of Defendant's car. Defendant opened his car door to reprimand Victim for slamming the door and got out of his car to pull out his gun and point it at Victim, who was walking around the car from the rear passenger's side door at the time, and was unarmed. Defendant admitted that he briefly considered driving away when Victim wandered into traffic a few moments later, and that he failed to take advantage of the opportunity. Defendant kept his gun in his hand, lowering it, but never returning it to its holster, even when Victim turned away. It was only when Victim turned back toward the car and saw Defendant still with his gun in his hand that Victim threatened to run Defendant over, and started moving toward the open driver's side door of the car. And although Victim approached Defendant's car and began to reach inside, he had not yet stepped into the car and assumed control over it when Defendant, without a verbal warning, opened fire. Victim was just beginning to stoop with his head and hands reaching into the car when Defendant fired five shots into Victim's side and back through the open window of the driver's side door, killing him.

**{39}** We conclude that the district court failed to correctly apply the probable cause standard to these undisputed facts. This undisputed evidence supports *a reasonable belief* that an ordinary person of average disposition in Defendant's position would not have been provoked to the point of utilizing lethal force, but would instead have taken available opportunities to attain a position of safety from an unarmed man in no immediate position to pose a threat to Defendant's safety. The undisputed evidence also supports a *reasonable belief* that Victim acted in response to Defendant's drawing a gun early in the encounter. If so, Victim's subsequent response in attempting to threaten Defendant with his own car cannot be relied upon as sufficient provocation

under the law. *See State v. Gaitan*, 2002-NMSC-007, ¶ 13, 131 N.M. 758, 42 P.3d 1207.

**{40}** The district court's decision that there was no probable cause to charge second-degree murder appears to be based on the district court's conclusion that the proof provided by the prosecution was not sufficient to convict Defendant of second-degree murder, but only sufficient to convict of voluntary manslaughter. As this Court held in *Vallejos*, however, a finding of no probable cause should not be based on the absence of proof sufficient to convict. *See* 1979-NMCA-089, ¶ 12. Where the evidence is sufficient to support *a reasonable belief* that Defendant committed the crime charged, conclusive proof of each element of the offense can await trial. The undisputed facts establish a triable issue as to whether an ordinary person of average disposition would have been sufficiently provoked to temporarily lose self-control. This decision should be made by a jury. The district court having found otherwise, we reverse.

**CONCLUSION**

**{41}** For these above reasons, we reverse the district court's dismissal of the State's information charging Defendant with second-degree murder. We remand to the district court for reinstatement of the second-degree murder charge.

**{42} IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**I CONCUR:**

**J. MILES HANISEE, Chief Judge**

**GERALD E. BACA, Judge (dissenting in part).**

**BACA, Judge (dissenting in part).**

**{43}** I respectfully dissent from the majority's conclusion that a de novo standard of review is the correct standard of review to be applied when an appellate court reviews a trial court's determination of probable cause at a preliminary hearing. The correct standard of review in that instance is abuse of discretion.

**{44}** I also respectfully dissent from the majority's conclusion that the district court's finding of no probable cause was incorrect. Instead, I would affirm the district court's finding that the State failed to establish probable cause as to the charge of second-degree murder.

**{45}** Before proceeding further, let's consider, for a moment, the requirement, purpose, and procedure of and for a preliminary hearing. A preliminary hearing is required by our Constitution when the filing of a complaint or information commences a

criminal prosecution. N.M. Const. art. II, § 14. This provision of our Constitution is to insure that no person is deprived of his liberty without due process of law. "Thus, a defendant cannot be held for trial unless a preliminary hearing has been held at which time the accused is informed of the crime charged against him and *a magistrate has determined that probable cause exists to hold him*." *State v. Coates*, 1985-NMSC-091, ¶ 7, 103 N.M. 353, 707 P.2d 1163 (emphasis added), *abrogated on other grounds*, *State v. Brule*, 1999-NMSC-026, ¶ 3, 127 N.M. 368, 981 P.2d 782.

**{46}** The preliminary hearing is a critical stage of the criminal prosecution. *State v. Vaughn*, 1964-NMSC-158, ¶ 3, 74 N.M. 365, 393 P.2d 711. The preliminary hearing can be held in a magistrate or district court. Rules 5-302, Rule 6-202. If the prosecution is commenced in the district court by information, the district judge is permitted to remand the case to the magistrate court for a preliminary hearing. Rule 5-302(E).

**{47}** The preliminary hearing "operates as a screening device to prevent hasty and unwise prosecutions and to save an innocent accused from the humiliation and anxiety of a public prosecution." *Whitehead*, 1997-NMCA-126, ¶ 6. "At the preliminary hearing, the state is *required* to establish, *to the satisfaction of the examining judge*, two components: (1) that a crime has been committed; and (2) probable cause exists to believe that the person charged committed it." *State v. White*, 2010-NMCA-043, ¶ 11, 148 N.M. 214, 232 P.3d 450 (emphases added) (citing *Vallejos*, 1979-NMCA-089, ¶ 7). If at the conclusion of the preliminary hearing, the court finds probable cause, the case, if in the magistrate court, is bound over for trial in the district court. Rule 6-202(D)(3). If, on the other hand, at the conclusion of the preliminary hearing, the court does not find probable cause, the charge is dismissed without prejudice and the defendant is discharged. Rule 6-202(D)(1).

**{48}** With this in mind, let's turn to the case before us to determine what should be the correct standard of review when an appellate court is asked to review the probable cause determination of a trial court at the conclusion of a preliminary hearing.

## VI.    A De Novo Standard of Review Is Incorrect

**{49}** The appropriate standard of review to apply in this case is an issue of first impression. Given the import of our decision, one would expect a complete and robust discussion and analysis of the issues leading to the majority's conclusion. Such is not the case. Based on an incomplete analysis of the issue, the majority concluded that a de novo standard of review is the appropriate standard of review in cases such as this. *See* Maj. Op. ¶¶ 28-34. I respectfully disagree and believe because the majority applied the incorrect standard of review, they also reached the wrong result.

**{50}** First, the majority compares a review of a lower court's determination of probable cause at preliminary hearing to a review of an appeal involving probable cause to conduct a warrantless search. Maj. Op. ¶ 33. The majority, with minimal analysis, concludes that the standard of review applied in the latter instance is the correct standard to be applied in this case. Maj. Op. ¶¶ 33-34. They state that this is the correct

standard of review because the decision is made after the fact, following a full hearing. In support of their conclusion, the majority cites *Williamson*, 2009-NMSC-039, ¶ 27, stating:

> Our Supreme Court in *Williamson* approved the continued use of a de novo standard of review for the application of the law to the district court's findings of fact when reviewing a decision involving probable cause to conduct a warrantless search.
>
> We therefore conclude that a de novo standard should be applied to our review of the application of the law of probable cause to the district court's findings of fact, or to undisputed facts in the record.

Maj. Op. ¶¶ 33-34 (citation omitted).

{51}    The majority's comparison of a review of a warrantless search to a preliminary hearing is misplaced. The two are wholly dissimilar, except that each deals with the existence/nonexistence of probable cause. The similarities end there. An example of the stark difference between the two is that warrantless searches include a presumption of unreasonableness. In contrast, preliminary hearings have no presumptions for or against a party or issue. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." (internal quotation marks and citation omitted)); *c.f. Whitehead*, 1997-NMCA-126, ¶ 5 ("The primary purpose of the preliminary examination is to provide an *independent evaluation* of whether the state has met its burden of demonstrating probable cause." (emphasis added)).

{52}    Second, the majority agrees with the State's argument that this Court should adopt a de novo standard of review because "provocation" in relation to second-degree murder is a mixed question of law and fact. In support of this proposition, the State relies upon *State v. Attaway*, 1994-NMSC-011, ¶ 6, 117 N.M. 141, 870 P.2d 103, and *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. These cases are easily distinguished and do not guide us in resolving the issues here. Yet, the majority seems to accept the State's argument without question.

{53}    A review of these cases reveals that they do not support the majority's position. They are inapposite. In clarifying its holding in *Attaway*, our Supreme Court said that it "did not hold that all mixed questions of law and fact must be reviewed de novo. [It] simply held that, to determine the appropriate standard of review, the reviewing court must balance interests of judicial administration and public policy." *Williamson*, 2009-NMSC-039, ¶ 25. Specifically, concerning probable cause determinations, the Court said, "Accordingly, despite our broad language in *Attaway*, none of the principles articulated therein support the application of a de novo standard of review to an issuing court's determination of probable cause." *Williamson*, 2009-NMSC-039, ¶ 25. Thus, *Attaway* does not support a de novo review in this case.

**{54}**   *Salazar* is even farther removed from the circumstances before us in this case. *Salazar* had nothing to do with a trial court's determination of probable cause. Rather, *Salazar* is a case in which the issue was the propriety of jury instructions. In *Salazar*, our Supreme Court held that where there is a question concerning the appropriateness of jury instructions, the standard of review was de novo. It said, "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *Salazar*, 1997-NMSC-044, ¶ 49. Consequently, because *Salazar* discusses review of jury instructions, given or not given, an issue far different than the question before us in this case, *Salazar* does not provide any guidance in resolving the issues presented in this case.

**{55}**   Third, the majority, relying upon *Williamson*, 2009-NMSC-039, ¶ 28, chose not to adopt a deferential standard of review in this instance stating that "the adoption of a deferential standard of review for a magistrate's decision to issue a search warrant [does] not apply to the probable cause determination at preliminary hearing," because the standard in *Williamson* was adopted "in recognition of the often pressing demand for a quick decision on a warrant request in the lower court and to effectuate the state's strong preference in favor of the warrant process." Maj. Op. ¶ 32.

**{56}**   While I understand that the majority is seeking guidance from other procedures or situations like that before us, I do not agree that cases such as *Williamson* and the others cited by the majority are a sound basis for resolution of this case. Much like *Attaway*, *Williamson* is a case involving the review of the legality of a search. But unlike *Attaway*, the review was as to the propriety of the issuance of search warrants and not a warrantless search. Here, too, and for the same reasons I articulated above as to *Attaway*, I find the majority's reliance on this case is misplaced.

**{57}**   In fact, in *Williamson*, our Supreme Court rejected this Court's decision to apply a de novo standard of review to the issuance of a lower court's determination of probable cause in a search warrant. 2009-NMSC-039, ¶¶ 1, 18. In *Williamson*, the district court issued a search warrant based on probable cause that the defendant was shipping narcotics via mail. *Id.* ¶¶ 2-6. Before trial, the defendant moved to suppress the evidence gained from the search warrant because "the affidavit submitted in support of the first search warrant failed to set forth sufficient facts to establish probable cause." *Id.* ¶ 7. The district court granted the defendant's motion, and this Court affirmed that decision. *Id.* ¶¶ 7-8. The Supreme Court rejected this Court's application of a de novo standard of review and adopted the more deferential substantial basis standard of review. *Id.* ¶¶ 18, 29.

**{58}**   Cases such as *Attaway* and *Williamson* involving challenges to searches, warrantless or via search warrant, are most often appeals from a district court's granting or denial of a motion to suppress. Notably, in those cases, the reviewing court gives deference to the prevailing party. "On appeal from the denial of a motion to suppress, we determine under de novo review whether the district court correctly applied the law to the facts." *State v. Garcia*, 2009-NMSC-046, ¶ 9, 147 N.M. 134, 217 P.3d 1032. Viewing the facts "in a manner most favorable to the prevailing party" and deferring to

the district court's "findings of historical fact so long as they are supported by substantial evidence." *State v. Jason L.,* 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (internal quotation marks and citation omitted). Where there are no findings of fact, we "indulge in all reasonable presumptions in support of the district court's ruling." *Id.* ¶ 11 (internal quotation marks and citation omitted). Absent a contrary indication in the record, "we presume the court believed all uncontradicted evidence." *Id.* Consequently, the majority's reliance upon cases reviewing warrantless searches and searches pursuant to a search warrant is misplaced as these cases support applying a deferential standard of review rather than a de novo standard of review.

**{59}** Lastly—and most importantly—I am concerned that the majority's opinion is contrary to the principles laid out by this Court in *White*, 2010-NMCA-043. In *White*, the state, following a preliminary hearing before a magistrate judge, who found that the state failed to establish probable cause for various felony offenses, filed identical charges in district court. *Id.* ¶ 1. The district court remanded the matter to the magistrate court for a preliminary hearing. *Id.* The same magistrate judge who originally heard the case was assigned the case. The state peremptorily excused that magistrate judge, and the case was assigned to another magistrate judge. *Id.* The case proceeded to preliminary hearing before the new magistrate judge. *Id.* The state presented the same evidence to the new magistrate judge at the second preliminary hearing as it had to the original magistrate judge. *Id.* However, unlike the original magistrate judge, the new magistrate judge found probable cause as to the charges and bound the case over to the district court for trial. *Id.* On appeal, this Court held that the state's obtaining a probable cause determination on the same evidence with two different lower court judges was improper. *Id.* ¶ 18. "The result of the procedure employed by the [s]tate was to allow one magistrate to overrule another magistrate on the issue of probable cause after a review of the same evidence. This is not proper." *Id.* ¶ 16.

**{60}** With *White* in mind, the majority's decision to review de novo a lower court's decision regarding the determination of probable cause at a preliminary hearing would have the practical effect of this Court playing the role of the second magistrate judge in *White*. Essentially, in this case, because the State is dissatisfied with the district court's decision, the State is asking this Court to review the same evidence previously ruled upon by a neutral and detached magistrate or district judge, which *White* held to be improper.[3] "It is axiomatic that a party may not do indirectly that which the law does not permit directly." *Id.*

**{61}** This Court recently held in *State v. Ayon*, 2022-NMCA-003, 503 P.3d 405 (No. A-1-CA-38812, July 27, 2021), that district courts do not have the authority to determine if "evidence was illegally obtained at a preliminary hearing." *Id.* ¶¶ 1, 17. In making that

---

3Bear in mind that although the State is crying "foul" here due to the finding of no probable cause by the district court, the prosecution of Defendant upon the charge of second-degree murder is not precluded. The State, if it chooses, could readily proceed against Defendant by grand jury indictment or represent the case to the metropolitan or district court at a preliminary hearing upon new and additional evidence. *See State v. Chavez*, 1979-NMCA-075, ¶ 20, 93 N.M. 270, 599 P.2d 1067; *see also State v. Peavler*, 1975-NMSC-035, ¶ 8, 88 N.M. 125, 537 P.2d 1387; *State v. Burk*, 1971-NMCA-018, ¶¶ 2-3, 82 N.M. 466, 483 P.2d 940.

holding, we highlighted the common purposes between grand jury proceedings and preliminary hearings. *Id.* ¶ 11. Notably, we stated, "[d]ifferent rules regarding the district court's authority to review illegally obtained evidence based solely on the choice of proceedings—grand jury proceedings as opposed to preliminary hearings—may encourage favoring one proceeding over another, undercutting efficient judicial administration and causing confusion." *Id.* The same reasoning applies to this case. Giving the State the option to appeal an unsuccessful preliminary hearing to this Court, and as the majority would have it—with a de novo nondeferential review, would be tantamount to encouraging "one proceeding over another, undercutting efficient judicial administration and causing confusion." *Id.* In summary, for the reasons stated above, I am unpersuaded that the correct standard of review is de novo.

### VII.     Abuse of Discretion Is the Correct Standard of Review

**{62}**    The correct standard of review to be applied to the review of a court's probable cause determination at a preliminary hearing should be abuse of discretion.

**{63}**    The majority failed to address Defendant's argument that our case law suggests that this Court has been deferential in the past and should continue to do so on this issue.

**{64}**    In *Garcia*, after a successful preliminary hearing that charged the defendant with possession of marijuana, the defendant, on appeal, contended that the state failed to produce sufficient evidence that the substance involved was marijuana during the preliminary hearing. 1968-NMSC-119, ¶¶ 1-3. Although not stated outright, it appears our Supreme Court reviewed the appeal under a sufficiency of the evidence standard. *Id.* ¶ 7 ("The determinative question on appeal is whether the evidence offered at the preliminary hearing was sufficient to meet the above tests and to establish reasonable ground to satisfy the magistrate's judgment. In this case, we hold there was sufficient evidence." (citation omitted)). Our Supreme Court held that, for the purposes of the preliminary hearing, officer testimony that the substance was marijuana, absent any chemical testing, was sufficient to bind over the charge of possession of marijuana. *Id.*

**{65}**    Although no standard of review was pronounced in *Vallejos*, this Court gave considerable deference to the magistrate's ruling at the preliminary hearing and, without analyzing the evidence, held that the evidence presented at the preliminary hearing was sufficient to bind the defendant over for murder. 1979-NMCA-089, ¶¶ 6-13. In *Vallejos*, after it was determined that the deceased was in the hospital for two weeks before he died, the defendant argued that the state failed to prove that the death resulted from the criminal agency and not from other natural causes. *Id.* ¶¶ 4, 6. There, we reasoned that "[t]he [s]tate is only required to produce evidence sufficient to establish reasonable grounds for the [m]agistrate's exercise of judgment[,]" and concluded, "[t]he [m]agistrate had probable cause to believe [the] defendant committed the crime of murder." *Id.* ¶¶ 12-13.

**{66}** My reading of *Vallejos* and *Garcia* convinces me that this Court has at the very least implicitly applied a deferential standard for preliminary hearing decisions and that we should continue to do so. The application of a deferential standard for reviewing a lower court's preliminary hearing decision seems to make the most sense, especially at this early stage of the prosecution. This is because even in cases such as the one before us, where the presiding judicial officer found no probable cause, the State could still proceed with the prosecution by grand jury indictment or by means of a second preliminary hearing upon new or additional evidence. *See White*, 2010-NMCA-043, ¶ 12. As well, this standard of review will safeguard against the State shopping for a forum that will agree with its view of the evidence despite a previous decision against it. Most importantly, this standard of review will ensure that the citizens of our state will only be held to answer for criminal charges that are supported by probable cause thereby "sav[ing] an innocent accused from the humiliation and anxiety of a public prosecution." *Whitehead*, 1997-NMCA-126, ¶ 6. Consistent with *Williamson* and *Attaway*, judicial administration and public policy weigh in favor of a deferential abuse of discretion standard of review. *See Williamson*, 2009-NMSC-039, ¶ 25 ("[T]he reviewing court must balance interests of judicial administration and public policy."). "It is not the function of [the] court to sit as a second preliminary hearing court to review the evidence of probable cause." *People v. Ayala*, 770 P.2d 1265, 1266 (Colo. 1989) (en banc). "When [the] court is asked to make a case-by-case review of the trial court's determination of the sufficiency of the evidence, the time expended by the court serves little purpose and is rarely productive of any precedential value." *Id.* (internal quotation marks and citation omitted).

**{67}** When reviewing a preliminary hearing decision from a lower court, we should apply an abuse of discretion standard similar to other jurisdictions. "It is well-settled that the standard to be observed in reviewing a magistrate's determination at preliminary examination is that the reviewing court should not disturb the determination of the magistrate unless a clear abuse of discretion is demonstrated." *People v. Doss*, 276 N.W.2d 9, 13 (Mich. 1979). "The magistrate's determination regarding the existence of probable cause shall not be disturbed upon review unless a clear abuse of discretion is demonstrated." *State v. Olsen*, 462 N.W.2d 474, 476 (S.D. 1990). To do otherwise would permit the State a second-look at the same evidence, without deferring to the trial courts who are in a better position to weigh the evidence.

**{68}** Therefore, the correct standard of review should be abuse of discretion.

## VIII. The District Did Not Abuse Its Discretion

**{69}** I would affirm the district court's decision in this case.

**{70}** "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{71}** The State failed to argue that the district court abused its discretion. Instead, the State made three arguments on appeal. The State contends that (1) in determining whether probable cause exists to bind over a defendant for trial, the district court must view all evidence presented at the preliminary hearing in the light most favorable to the State and draw all inferences in the State's favor; (2) whether there is sufficient provocation to reduce a charge of second-degree murder to voluntary manslaughter is exclusively within the province of the jury, and should not be the basis for a finding of no probable cause; (3) this Court should review the district court's application of the law of probable cause to the facts applying a de novo standard of review.

**{72}** The majority rejected the State's first two contentions for some very sound reasons, and I agree with them. As to the third issue, I have to disagree with the majority's opinion for the reasons stated above.

**{73}** Therefore, without sufficient argument to the contrary, and upon reviewing the record, I find that the district court did not abuse its discretion in determining that the State failed to establish probable cause as to second-degree murder. I would therefore affirm.

**GERALD E. BACA, Judge**